# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* STATE OF MARYLAND COMMISSION ON HUMAN RELATIONS

[No. 82, September Term, 1980.]

*Decided May 26, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Joseph G. Williams, Jr.,* and *Barrett W. Freedlander,* with whom were *Werner Weinstock* and *Niles, Barton & Wilmer* on the brief, for appellant.

*Risselle Rosenthal Fleisher, General Counsel,* with whom were *Philip L. Marcus, Assistant General Counsel,* and *Ilene S. Cohen, Staff Attorney,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The Equitable Life Assurance Society of the United States (Equitable Life), an insurance company, in this appeal seeks to have this Court reverse the judgment of the Circuit Court for Baltimore County which declined to hold that the State Commission on Human Relations (Commission) is precluded from exercising jurisdiction over Equitable Life with regard to alleged discrimination in its rate setting and underwriting practices. We, too, shall decline its request and affirm the judgment of the lower court.

The seeds of this controversy were sown when the Commission began an investigation of Equitable Life in 1975 and thereafter issued a written finding that Equitable Life discriminated against blacks and females with respect to disability income, health and life insurance policies. The Commission next filed a statement of charges, brought pursuant to Maryland Code (1957, 1971 Repl. Vol., 1976 Cum. Supp.), Art. 49B, § 11C (now Maryland Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 49B, § 8), alleging various counts of discrimination in rate setting and underwriting practices. Prior to a hearing on the merits, Equitable Life filed a motion to dismiss, asserting the Commission's lack of jurisdiction, on the grounds that the practices placed in issue in the statement of charges were already subject to regulation by the Insurance Commissioner, and that Equitable Life was in full compliance with those regulations. After oral argument, the

hearing examiner ruled that the Commission had jurisdiction over insurance companies generally, and over the insurance practices of Equitable Life specifically. The motion to dismiss was denied, and the matter was scheduled for a full hearing on the merits.

Prior to the hearing, Equitable Life filed a bill of complaint in the Circuit Court for Baltimore County requesting declaratory and injunctive relief. Raised in this action was the jurisdictional issue, as well as the constitutionality of Article 49B, § 11C, under Maryland Constitution, Article III, § 29. The administrative proceeding before the Commission was stayed, pending resolution of the matter before the Circuit Court, which decided (1) that the Commission had jurisdiction to proceed and (2) that the enactment of § 11C was not constitutionally defective as alleged in Equitable Life's bill. Equitable Life appealed and this Court granted certiorari upon its own motion, prior to review by the Court of Special Appeals.

Equitable Life in this appeal raises several issues which we summarize as follows:

1. Whether the Commission has jurisdiction concurrent with that of the Insurance Commissioner to investigate unfair discriminatory practices in the insurance industry.

2. Whether Article 49B, § 8 violates Article III, § 29 of the Maryland Constitution because the titles used in enacting and amending it are misleading and contain more than one subject.[1]

---

1. Equitable Life has raised the following issues in its brief:

1. Whether the anti-discrimination provisions of Article 48A relating to underwriting and rate-setting permit the use of criteria and justifications utilized by Appellant.

2. Whether the Legislature of Maryland has manifested its intent that the public is best served by granting the Insurance Division jurisdiction over all matters relating to discrimination in insurance.

3. In view of the affirmative answers to the two preceding Questions, whether the Appellee is barred from extending its jurisdiction over the aspect of the Insurance Code that pertains to sex distinctions in rates and underwriting practices.

4. Whether Article 49B, Section 8 (formerly Section 11C) is unconstitutional and void to the extent that its text overreaches

We believe our holding in *Equitable Tr. Co. v. State Comm'n,* 287 Md. 80, 411 A.2d 86 (1980), *"Equitable Trust,"* is dispositive ' of the first issue. There the Commission sought to investigate Equitable Trust, a banking institution, alleging that it was engaged in the "unlawful application of financial standards, terms, and conditions regarding mortgage financing, personal credit, and all other forms of credit to individuals and classes protected by Article 49B" (Human Relations Commission). *Id.* at 82 n.1. Although we reversed the trial court because the Commission's complaint was not issued under oath as required by Md. Code (1957, 1979 Repl. Vol.), Art. 49B, §§ 9(a) and (b), we quoted § 8 of this article which provides that it is unlawful for one

> licensed or regulated by the Department of Licensing and Regulation as set out under Article 41, . . . § 221A (a) . . . to refuse, withhold from, deny or discriminate against any person the accommodations, advantages, facilities, privileges, sales or services because of the race, sex, creed, color, national origin, marital status, or physical or mental handicap of any person[,]

and then we observed that

> Section 8 prohibits, among other things, refusal or withholding of certain advantages from any person. If one denies an individual an automobile loan or a credit card because of his race or sex, as the complaint alleges has been done, then it certainly follows that he has been denied an advantage. It is conceded that Equitable is subject to regulation by

---

the title to that section as contained in the Laws of Maryland, Chapter 875, 1974 and to the extent that the title contains more than one subject.

5. Alternatively, whether a delegation of administrative functions relating to the insurance industry to the Appellee, if made, is unconstitutional because it is' vague, contains no standards and safeguards governing the exercise of such administrative functions, and the Legislature previously granted the Insurance Division jurisdiction over the insurance business.

Question (5) shall not be addressed, as it involves an issue neither raised nor decided below. Md. Rule 885.

the Bank Commissioner, who is assigned by Code (1957, 1978 Repl. Vol.), Art. 41, § 221A (a) to the Department of Licensing and Regulation. [287 Md. at 86.]

In the instant case, the appellant, Equitable Life, is subject to the rules and regulations of the Insurance Commissioner, who heads the Insurance Division. Since one's ability to obtain an insurance policy is an advantage, and since under Art. 41, § 221A (a) the Insurance Division is included within the Department of Licensing and Regulation, it is plain that § 8 grants the Commission on Human Relations jurisdiction to investigate alleged unfair discriminatory practices by insurers.

Nevertheless, Equitable Life argues that the issue is not so simple. It asserts that each charge of discrimination made by the Commission in its administrative action pertains to underwriting practices and actuarial justifications which are permissible under the Insurance Code. It further maintains the Insurance Commissioner is the expert with regard to the type of discrimination which may be permitted in the insurance industry and that he, alone, has been saddled with the responsibility to guard against such discrimination as prohibited under §§ 223 and 234A of the Insurance Code. In other words, Equitable Life argues that in view of the rate setting and actuarial complexities of the insurance business, and the extent to which certain kinds of discrimination are already prohibited under Article 48A, the legislature never intended to grant the Commission concurrent jurisdiction over insurers, and for this Court to uphold the lower court's judgment would wreak havoc upon the insurance industry.

Although Equitable Life's contentions might be used to fuel an argument attacking legislative wisdom, they do not enable us to ignore the dictates of clear and unambiguous statutory language. As we have often stated:

[T]he cardinal rule of statutory construction is to ascertain and carry out the actual intention of the legislature. . . . The statutory language itself

provides the clearest indication of the legislative intent and is thus the primary source for all° statutory construction. . . . When the words used convey a clear and plain meaning, there is no need to look beyond the statute to ascertain the legislative intent. . . . [*State v. Berry,* 287 Md. 491, 495-96, 413 A.2d 557 (1980) (citations omitted).]

We have also recognized that

[i]t is well settled in this State that when two acts of the General Assembly covering similar subject matter make no reference to each other, if it is at all feasible, they will be construed so as to give as full an effect to each other as possible. . . . In order for one statute to alter or limit another, the intention of the Legislature to do so must be clear and manifest; otherwise, the requirements of one will be construed as embodying the provisions of the other. [*City of Baltimore v. Clerk,* 270 Md. 316, 319, 311 A.2d 261 (1973) (citations omitted).]

Here the language of § 8 is plain and in need of no explanation. An examination of Articles 49B and 48A reveals no provision in either enactment which would exclude, exempt or preempt insurers from the concurrent jurisdiction of the Commission. Nor do we find any merit in Equitable Life's suggestion that affirming the lower court means that the Commission will be authorized to regulate the insurance industry. This responsibility is assigned by the legislature to the Insurance Commissioner. Pursuant to the various provisions of Article 48A, he may prescribe standards of lawful discrimination. However, this is not inconsistent with the legislature assigning to the Commission the responsibility of ferreting out unfair discrimination (as provided within Section 8) by those licensed to engage in the insurance industry. We find that the activities of the Insurance Commissioner and the Commission in exposing and correcting unfair discrimination in insurance may co-exist, each agency having been authorized to act by the legislature.

In essence, the real issue confronting the Commission and Equitable Life involves the standards to be applied, given the facts and circumstances of the particular case. We shall not here consider what effect the various insurance statutes (and the rules and regulations promulgated thereunder) will have upon the specific charges of discrimination in Equitable Life's as-of-yet undecided administrative case. These are matters not properly raised or decided in the action before us. Most important, the Commission has not yet had the opportunity to consider such particulars in a hearing held in its own administrative forum. We do hold that the Commission has the jurisdiction to proceed.

Equitable Life next contends that Article 49B, § 8 violates Article III, § 29 of the Maryland Constitution because the titles used in enacting and amending § 8 are misleading and contain more than one subject. Section 29 of Article III provides in part:

> [E]very Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; . . . .

The purpose of the two complementary requirements of this provision is to prevent the joining in one act of totally unrelated pieces of legislation, which would not have received support if offered independently, and to assure that the public and members of the legislature are adequately informed about the nature and impact of pending legislation. Equitable Life's basic argument is that the title of Chapter 875, Laws of Maryland, 1974, is underinclusive and therefore misleading. The full title of Chapter 875 is set forth as follows:

> AN ACT concerning
> > Discrimination — Prohibited in Public Accommodations, Housing and Employment
> FOR the purpose of prohibiting certain discriminatory activities in public accommodations, employment and housing

because of marital status, or physical or mental handicaps; relating generally to discrimination based on marital status, or physical or mental handicaps, and clarifying the language.

BY repealing and re-enacting, with amendments,

Article 49B — Human Relations Commission Section 11, 11B, 11C, 17, 19 (a), (b), (c), (d), 21 (a), 22, and 23 (a) Annotated Code of Maryland (1972 Replacement Volume and 1973 Supplement)

BY adding to

Article 49B — Human Relations Commission Section 18 (g), and 21 (b) (7) Annotated Code of Maryland (1972 Replacement Volume and 1973 Supplement)

The thrust of Equitable Life's contention is that because § 8 of Article 49B happens to fall under the subtitle "Discrimination in Public Accommodations," and the title to Chapter 875 contains no reference to insurance, application of § 8 must be confined to "places of public accommodation" as defined in § 5 of Article 49B. However, Equitable Life obviously ignores the history and development of this subtitle, which was added upon the enactment of § 5 (then § 11) of Article 49B in 1963. Chapter 227, Laws of Maryland, 1963.

Chapter 227 prohibited discrimination in places of public accommodation, such as "any hotel, restaurant, inn, motel or an establishment regularly . . . engaged in the business of providing sleeping accommodations, or serving food, or both . . . open to the general public." Since 1963, three sections have been added to the Discrimination in Public Accommodations subtitle: Section 6 (prohibits the receipt of remuneration for participation in racial demonstrations) (originally enacted as Section 11A, Chapter 29, § 1, Laws of

Maryland, 1964, 1st Special Session); Section 7 (prohibits discrimination by State agencies, officers or employees) (originally enacted as § 11B, under Chapter 153, Laws of Maryland, 1969); and Section 8 (originally enacted as § 11C, under Chapter 447 of the Laws of Maryland, 1971). The title of the Bill enacting Section 11C was set forth as follows:

AN ACT to add new Section ~~14(c-1)~~ 11C to Article 49B of the Annotated Code of Maryland (1968 Replacement Volume and 1970 Supplement), title "Human Relations Commission," subtitle ~~"Enforcement Powers of Commission,"~~ "DISCRIMINATION IN PUBLIC AC-COMMODATIONS," to follow immediately after Section ~~14(c)~~ 11B thereof, ~~to enable the Human Relations Commission, under certain conditions, to suspend temporarily or revoke permanently the license of any respondent licensed to do business or to practice a profession under any State licensing requirement who is found to have engaged in a discriminatory act in violation of this Article.~~ TO PROVIDE THAT IT IS IS UNLAWFUL FOR ANY PERSON, BUSINESS, CORPORATION, PARTNERSHIP, CO-PARTNERSHIP, ASSOCIATION OR ANY OTHER INDIVIDUAL, AGENT, EMPLOYEE, GROUP OR FIRM WHICH IS LICENSED OR REQUIRED UNDER THE DEPARTMENT OF LICENSING AND REGULATION TO REFUSE, WITHHOLD FROM, DENY OR DISCRIMINATE AGAINST ANY PERSON THE ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES, SALES OR SERVICES BECAUSE OF THE RACE, SEX, COLOR, CREED OR NATIONAL ORIGIN OF ANY PERSON; AND GENERALLY RELATING THERETO.

The General Assembly amended Section 11C in 1974 to prohibit discrimination on the basis of marital status or physical or mental handicap. This was the only substantive change made since the section's enactment three years earlier. It did not enlarge the group to be regulated thereunder, but merely extended existing protection to other classes.

It is patently clear to us that the title used in enacting Section 8 contains no ambiguities and has fairly advised the legislature and the general public of the subject matter of the legislation enacted. The section makes it unlawful for certain specified persons or groups licensed or regulated by the Department of Licensing and Regulation to discriminate against or withhold from any person the accommodations, advantages, facilities, privileges, sales or services because of race, sex, creed, color, national origin, marital status or physical or mental handicap.

Equitable Life's argument that the title to Chapter 875, Laws of Maryland, 1974, refers only to discrimination in public accommodations, employment and housing is specious, at best. It is clear to us that the title describes the act as "relating generally to discrimination," as regulated under Article 49B. It is equally plain that the description, "public accommodations" refers generally to regulatees under the subtitle, "Discrimination in Public Accommodations."

The purpose of the title requirement set forth in our constitution is to inform members of the legislature and the public of the nature of the proposed legislation; however, the title of an act need not give an abstract of its contents. *City of Baltimore v. State,* 281 Md. 217, 225, 378 A.2d 1326 (1977) (and cases cited therein). This court restated this long standing principle in *McGlaughlin v. Warfield,* 180 Md. 75, 78, 23 A.2d 12 (1941):

> In accordance with the great weight of authority in this country, this Court has consistently held that the purpose of the constitutional provision here

invoked is sufficiently complied with if the title of the proposed legislation fairly advises the General Assembly, and the public, of the real nature, and subject matter, of the legislation sought to be accomplished, and in testing conformity of a title of a statute to constitutional requirements that the subject should be described in the title, the courts are disposed to uphold rather than to defeat the statute, and since every presumption favors the validity of a statute, it cannot be stricken down as void, unless it plainly contravenes a provision of the Constitution; a reasonable doubt in its favor is enough to sustain it. [*Accord, Atkinson v. Sapperstein,* 191 Md. 301, 315, 60 A.2d 737 (1948).]

Equitable Life has failed to overcome the presumption of validity with respect to the titles used in enacting and amending Section 8 of Article 49B and we hold that Section 8 meets the constitutional standard prescribed by Article III, Section 29.

Equitable Life also claims the title to embrace more than one subject and is thus constitutionally defective. We find this contention totally without merit. In *Baltimore v. Reitz,* 50 Md. 574, 579 (1879), it was explained:

If several sections of the law refer to and are *germane* to the same subject-matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. . . . If foreign and irrelevant, or discordant matter is introduced, it will be rejected, if other sections of the law can stand without it. But if the Act is composed of a number of discordant and dissimilar subjects, so that no one could be clearly recognized as the controlling or principal one, the whole law would be void.

The cases reflect that the object of the "one subject" requirement is not to thwart the legislature when it seeks to

pass comprehensive legislation, *see, e.g., Madison Nat'l Bank v. Newrath,* 261 Md. 321, 338, 275 A.2d 495 (1971) (involving adoption of the Uniform Commercial Code); *Panitz v. Comptroller,* 247 Md. 501, 511, 232 A.2d 891 (1967) (with respect to a Supplemental Appropriations Bill), but merely to thwart ·the stealthy incorporation of foreign matter into a bill receiving popular support. *Baltimore v. Reitz, supra.*

We find each of the challenged enactments to relate to but one subject: discrimination. This is the common thread which joins §§ 11 and 11C and the various amendments thereto. The legislature in enacting and amending Article 49B leaves no room to doubt its intent and purpose, *i.e.,* to eradicate the vestiges of discrimination in the categories designated.

> *Judgment of the Circuit Court for Baltimore County affirmed; appellant to pay the costs.*