747 A.2d 1225

David MIGDAL et al.

v.

STATE of Maryland et al.

No. 115, Sept. Term, 1999.

Court of Appeals of Maryland.

March 14, 2000.

Ronald B. Rubin (Rubin & Monahan, Chartered, on brief), Rockville; Wechsler Harwood Halebian & Feffer, LLP, New York City, of counsel, for Petitioners.

Robert A. Zarnoch, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen. of Maryland and Kathryn M. Rowe, Asst. Atty. Gen., on brief), Annapolis, for Respondents.

Brief of Amici Curiae Investment Company Institute, Maryland Securities Ass'n, Including T. Rowe Price Associates, Inc., Ferris, Baker, Watts, Inc., DB Alex. Brown LLC, and Legg Mason Wood Walker, Inc., and Alliance Capital Management L.P.

James J. Hanks, Jr., Ballard Spahr Andrews & Ingersoll, LLP, Baltimore, Amicus brief for Investment Co. Institute and Alliance Capital Management L.P.

David Clarke, Jr., Paul A. Tiburzi, Piper Marbury Rudnick & Wolfe LLP, Baltimore, Amicus brief for Maryland Securities Ass'n.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, and THEODORE G. BLOOM, (retired, specially assigned), and RAYMOND G. THIEME, Jr. (specially assigned), JJ.

CATHELL, Judge.

Petitioners, David Migdal and Linda B. Rohrbaigh,[1] filed a complaint on February 23, 1999 in the Circuit Court for Montgomery County, seeking a declaratory judgment that Maryland Code (1975, 1999 Repl.Vol.), section 2–405.3 of the Corporations and Associations Article was enacted in violation of Article III, section 29 of the Constitution of Maryland, commonly known as the "one-subject rule." The State filed a motion to dismiss on the grounds of ripeness, necessary parties, standing, and sovereign immunity. The motion was denied after a hearing on June 28, 1999. Petitioners immediately submitted an amended complaint on June 29, 1999 to add the Governor of Maryland as an additional party defendant and to add additional allegations regarding justiciability, to which the State filed an answer. After informal discovery, the parties filed two stipulations to facilitate the circuit court's decision-making process. Both parties filed additional exhibits in support of their cross-motions for summary judgment. On October 14, 1999, the circuit court entered a declaratory judgment in favor of the State. Petitioners filed a notice of appeal the next day. Prior to briefing in the Court of Special Appeals, we granted the petition for writ of certiorari filed by petitioners. We shall reverse.

## I. Facts

House Bill 356 was introduced by Maryland Delegates Robert Frank and Ann Marie Doory on January 30, 1998. The bill was designed to amend section 2–405 of the Corporations & Associations Article by adding a new subsection that applied only to directors of mutual funds. The bill was

---

1. Petitioners are shareholders of two mutual funds managed by affiliates of T. Rowe Price Associates, Inc.: (1) the International Stock Fund and (2) the Growth Stock Fund.

initially introduced at the request of T. Rowe Price and others in the mutual fund industry in an effort to overrule the holding of a case in the United States District Court for the Southern District of New York. *See Strougo v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783 (S.D.N.Y.1997). In its title, the bill stated it was "[for] the purpose of providing that certain directors of certain investment companies shall be deemed to be independent and disinterested for purposes of performing their duties."

On March 27, 1998, the House of Delegates passed House Bill 356 by a vote of 83 to 36 (22 Delegates did not vote). In the Senate, the bill was assigned to the Senate Committee on Judicial Proceedings. The Judicial Proceedings Committee held a public hearing on this bill on April 7, 1998, during which representatives from both sides of the issue presented written and oral testimony. On April 9, 1998, the Judicial Proceedings Committee voted 8 to 3 against the measure and issued an unfavorable report, thereby killing House Bill 356.

In response to the rejection of House Bill 356, T. Rowe Price and other mutual fund firms held a meeting with representatives of the Governor and the Senate leadership on April 10, 1998, informing them that, if the substance of House Bill 356 was not enacted before the end of the 1998 legislative session, the firms would collectively consider reincorporating in Delaware. On Saturday, April 11, 1998, the text of the defeated House Bill 356 was engrafted onto an existing, unrelated bill—Senate Bill 468. Senate Bill 468 had previously been unanimously approved by the Senate Judicial Proceedings Committee, had passed the Senate on a vote 44 to 0, and had reached a second reader in the House of Delegates. In its title, Senate Bill 468 stated that it was "[for] the purpose of establishing that certain persons must provide written consent before being designated resident agents; altering the requirements relating to certain fees paid by certain resident agents; and generally relating to resident agents." It applied, generally, to all resident agents of any corporation or association.

**312**

In the House of Delegates, a floor amendment was offered that added the provisions of House Bill 356, as amended, to Senate Bill 468 and altered the short title to read "Corporations and Associations—Resident Agents and Directors." The amended bill, including the text of defeated House Bill 356, was approved by the House on a vote of 113 to 10. On April 13, 1998, the last day of the 1998 legislative session, the Senate Judicial Proceedings Committee voted 8 to 3 for the amended bill; however, in its explanation of its concurrence in the amended Senate Bill 468, it noted that "[t]he House tacked on a bill that the [Senate] Judicial Proceedings Committee killed last week." That same day, the amended Senate Bill 468, including the substance of the defeated House Bill 356, passed the Senate by a vote of 26 to 20. The original sponsor of Senate Bill 468 spoke and voted against the bill on the Senate Floor. Delegate John S. Morgan wrote to Mr. Ronald B. Rubin in a letter postmarked April 14, 1998, that House Bill 356 "was attached to an unrelated piece of legislation to resurrect it after an unfavorable report by [the] Senate [Judicial Proceedings Committee]." The bill was signed by the Governor as 1998 Maryland Laws, Chapter 397.

The Act as subsequently amended by the inclusion of the provisions of House Bill 356 and enacted provided:

CHAPTER 397
(Senate Bill 468)

AN ACT concerning

**Corporations and Associations—Resident Agents ~~Written Consent~~**
*~~and Directors~~*

FOR the purpose of ~~establishing that certain persons must provide written consent before being designated resident agents; altering the requirements relating to certain fees paid by certain resident agents~~ prohibiting certain entities from designating a person as a resident agent without first obtaining the person's written consent; requiring the

written consent to be filed with the Department of Assessments and Taxation; making the consent effective upon acceptance by the Department; authorizing a resident agent to resign without paying a certain fee; *providing that certain directors of certain investment companies shall be deemed to be independent and disinterested for purposes of performing their duties; providing for the application of certain provisions of this Act; and generally relating to resident agents and directors of corporations.*

BY adding to

Article—Corporations and Associations

Section 1–208 *and 2–405.3*

Annotated Code of Maryland

(1993 Replacement Volume and 1997 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND. That the Laws of Maryland read as follows:

### Article—Corporations and Associations

1–208.

(A) NOTWITHSTANDING ANY OTHER PROVISION OF THIS TITLE, AN ENTITY THAT IS REQUIRED TO HAVE A RESIDENT AGENT MAY NOT DESIGNATE A PERSON AS A RESIDENT AGENT WITHOUT FIRST OBTAINING THE PERSON'S WRITTEN CONSENT.

(B) (1) AN ENTITY SHALL FILE A RESIDENT AGENT'S WRITTEN CONSENT WITH THE DEPARTMENT.

(2) THE CONSENT SHALL BE EFFECTIVE UPON ACCEPTANCE BY THE DEPARTMENT.

(C) SUBSECTIONS (A) AND (B) OF THIS SECTION DO NOT APPLY TO RESIDENT AGENTS DESIGNATED BEFORE OCTOBER 1, 1998.

(D) (1) A PERSON DESIGNATED A RESIDENT AGENT ~~WITHOUT CONSENT BEFORE OCTOBER 1,~~

1998 MAY RESIGN WITHOUT PAYING THE FEE UNDER § 1–203(2) OF THIS SUBTITLE.

(2) THE ENTITY THAT DESIGNATED A RESIDENT AGENT WHO RESIGNS UNDER PARAGRAPH (1) OF THIS SUBSECTION SHALL PAY THE FEE UNDER § 1–203(2) OF THIS SUBTITLE.

SECTION 2. *AND BE IT FURTHER ENACTED. That the Laws of Maryland read as follows:*

## Article—Corporations and Associations

*2–405.3.*

*(A) THIS SECTION APPLIES TO A CORPORATION THAT IS AN INVESTMENT COMPANY, AS DEFINED BY THE INVESTMENT COMPANY ACT OF 1940.*

*(B) A DIRECTOR OF A CORPORATION WHO WITH RESPECT TO THE CORPORATION IS NOT AN INTERESTED PERSON, AS DEFINED BY THE INVESTMENT COMPANY ACT OF 1940, SHALL BE DEEMED TO BE INDEPENDENT AND DISINTERESTED WHEN MAKING ANY DETERMINATION OR TAKING ANY ACTION AS A DIRECTOR.*

*SECTION 3. AND BE IT FURTHER ENACTED. That Section 2 of this Act shall be construed retroactively and shall be applied to and interpreted to affect only those cases filed on or after January 30, 1998.*

SECTION 2. 4. AND BE IT FURTHER ENACTED. That this Act shall take effect October 1, 1998.

Approved May 12, 1998.

## II.   The "One–Subject" Rule

Article III, section 29 of the Maryland Constitution provides that "every Law enacted by the General Assembly shall embrace but one subject." We discussed the history behind the enactment of section 29 extensively in *Porten Sullivan Corp. v. State,* 318 Md. 387, 397–400, 568 A.2d 1111, 1115–16 (1990):

The "one-subject" restriction of § 29 entered our Constitution in 1851, but perusal of the debates of the 1851 Constitutional Convention reveals little about the purpose of the provision. The one-subject requirement was included, with other language, in an amendment proposed by Mr. Stewart of Caroline County. 1 *Debates and Proceedings of the Maryland Reform Convention to Revise the State Constitution* 305 (1851). Mr. Stewart explained that "[i]n Louisiana, every law embraced one subject, and the object of the law was expressed in the title page." *Id.* at 312. But the discussion of his amendment centered on other aspects, particularly portions that, it was thought, would promote ease of access to the laws and reduction of confusion caused by lack of codification. *Id.* at 314.

We learn little more from the proceedings of the 1864 and 1867 conventions. At each of them, the one-subject rule was included in the recommendations of the Committee on the Legislative Department (and in the Constitution eventually adopted) but at neither of them was it discussed. 1 *The Debates of the Constitutional Convention of the State of Maryland* 474 (Bayly 1864); *Proceedings of the State Convention of Maryland to Frame a New Constitution* 107 (Colton 1867). The 1967 Constitutional Convention Commission Report sheds a bit more light on the matter. Although the constitution drafted by the Constitutional Convention Commission (and in substance adopted by the Convention) was not ratified by the voters, § 3.15 of the draft document included the requirement that "[e]very law enacted by the General Assembly shall embrace only one subject, which shall be described in its title." The Commission believed

> that the reasons for requiring a single subject and a descriptive title are still valid and that the requirement is desirable. The absence of such a provision might in some instances make it necessary for a legislator to acquiesce in an undesirable bill in order to secure useful and necessary legislation.

*Report of the Constitutional Convention Commission* 141 (1967).

One reason for the relatively limited discussion, in Maryland constitutional history, of the reasons for the single-subject rule may be that it is one that has been applied for centuries. During Roman times, there was a prohibition against proposing laws that contained more than one subject.

. . . .

. . . Many states recognize that a purpose of the one-subject rule is "to prevent 'riders' from being attached to bills that are popular and so certain of adoption that the rider will secure adoption not on its own merits, but on the merits of the measure to which it is attached."

. . . .

An additional purpose of the single-subject rule is to "protect the integrity of the governor's veto power." In *Brown v. Firestone,* the Supreme Court of Florida said that a purpose of the one-subject rule is to prevent

"a practice under which the legislature could include in a single act matters important to the people and desired by the Governor and other matters opposed by the Governor or harmful to the welfare of the state, with the result that in order to obtain the constructive or desired matter the Governor had to accept the unwanted portion. The veto power of the chief executive [would] thereby [be] severely limited if not destroyed and one of the intended checks on the authority of the legislature [would be] able to be negated in practice."

382 So.2d 654, 663–664 (Fla.1980) (quoting *Green v. Rawls,* 122 So.2d 10, 13 (Fla.1960)). [Brackets in *Porten Sullivan Corp.*] [Some citations omitted.]

We discussed the intended policy of Article III, section 29 in *Neuenschwander v. Washington Suburban Sanitary Comm'n,* 187 Md. 67, 77–78, 48 A.2d 593, 598–99 (1946):

This requirement that every law shall embrace but one subject was written into the Constitution of 1851 because

there had crept into our system of legislation a practice of engrafting upon measures of great public importance foreign matters for local or selfish purposes, and the members of the Legislature were often constrained to vote for such foreign provisions to avoid jeopardizing the main subject or to secure new strength for it, whereas if these provisions had been offered as independent measures they would not have received such support. In this way the people of the State were frequently inflicted with pernicious legislation. Very often the foreign matters were incorporated into the law stealthily, especially during the haste and confusion that always prevailed near the close of the session, and in this way the statute books contained many enactments which few of the members of the Legislature knew anything about.

*See also, e.g., Equitable Life Assurance Soc'y v. State Comm'n on Human Relations,* 290 Md. 333, 339, 430 A.2d 60, 64 (1981) ("The purpose . . . of this provision is to prevent the joining in one act of totally unrelated pieces of legislation, which would not have received support if offered independently . . . .").

▆ The key to evaluating a particular piece of legislation under Article III, section 29 appears to be the germaneness of the individual components of the law as passed. For instance in *Maryland Classified Employees Ass'n v. State,* 346 Md. 1, 15–16, 694 A.2d 937, 944 (1997), a case in which we held the one-subject rule had not been violated, we noted:

Connection and interdependence can be on either a horizontal or vertical plane. Two matters can be regarded as a single subject, for purposes of § 29, either because of a direct connection between them, horizontally, or because they each have a direct connection to a broader common subject to which the Act relates. *See Panitz v. Comptroller,* 247 Md. 501, 511–12, 232 A.2d 891, 896–97 (1967) (otherwise disparate appropriations in supplementary appropriations bill sustainable under § 29 as embracing but one subject— increased financial aid to local subdivisions); *see also Baltimore v. Reitz,* 50 Md. 574, 579 (1879): "If several sections of the law refer to and are *germane* to the same subject-matter, which is described in its title, it is considered as

embracing but a single subject, and as satisfying the requirements of the Constitution in this respect."

"Stated in a somewhat different way, an act meets both the 'subject' ... requirements of § 29 if its 'several sections refer to and are *germane* to the same subject-matter' ...." *Porten Sullivan Corp.*, 318 Md. at 407, 568 A.2d at 1120–21 (quoting *Reitz*, 50 Md. at 579). "The notion of germaneness is like those of connection and interdependence, for 'germane' means '[i]n close relationship, appropriate, relative, pertinent.'" *Id.* (quoting *Black's Law Dictionary* 618 (5th ed.1979)).[2]

█ Section 1 of 1998 Maryland Laws, Chapter 397 is not germane to sections 2 and 3. The original text of the title of the Act indicated that it was "[for] the purpose of prohibiting certain entities from designating a person as resident agent without first obtaining the person's written consent" and other related purposes. The "eleventh-hour" language engrafted from House Bill 356 into Chapter 397 indicates an additional "purpose of providing that certain directors of certain investment companies shall be deemed to be independent and disinterested for purposes of performing their duties...."

The State argues first that these two purposes are germane because they "embrac[e] the subject of corporations and associations and both amend[ ] that Article of the Code." At the same time, it argues that they "deal only with one type of corporation, *i.e.*, investment companies." That is simply incorrect. We note that, while investment companies generally must have a resident agent, so do other organizational entities, many of which do not serve investment purposes and all of which are subject to the "resident agent" provision enacted in Chapter 397. For example, the Corporations & Associations Article requires resident agents to be appointed for religious corporations, § 5–304(b)(3), agricultural cooperatives, § 5–505(a)(5), consumer cooperatives, § 5–5A–07(a)(5), and any other general corporation that exists for purposes other than

---

2. For reference, *Porten Sullivan Corp.* and *Classified Employees* contain extensive discussions of the one-subject rule. We shall not repeat the entirety of those discussions in this opinion.

investment. *See* § 2–108(a)(2). Clearly, a provision generally dealing with resident agents governs more than just investment companies.

As to the State's first argument, under the circumstances of this case, the "vertical" purpose of generally regulating corporations is too broad and tenuous of a relationship to satisfy the one-subject requirement of Article III, section 29. A "resident agent" and a "director" may both be associated with a corporation (or other entity) and may even be the same person. But they serve different functions and are dissimilarly defined. A resident agent is defined in Corporations and Associations Article, section 1–101(r): *"Resident agent.*—'Resident agent' means an individual residing in this State or a Maryland corporation...." Section 1–101(k) defines a director as "a member of the governing body of a corporation...." The offices, moreover, serve completely different purposes under the statute: resident agents receive service of process on behalf of a Maryland corporation or association, *see* Corporations and Associations Article, section 1–402(a) and Md. Rules 2–124(c), (e)–(g); 3–124(c), (e)–(g), while, as we have indicated, a director is a "member of the governing body of a corporation." Md.Code (1975, 1999 Repl.Vol.), § 1–101(k) of the Corporations & Associations Article. The tenuousness of this relationship becomes more apparent when the application of Chapter 397 to these two positions (resident agent and director) is viewed in conjunction with their already separate and distinct functions. Section 1 of Chapter 397 protects individuals from being appointed as a resident agent without their written consent. Sections 2 and 3, on the other hand, seek to protect, from shareholders' derivative suits, decisions made by directors of investment companies who serve on multiple boards and receive monetary compensation for their service. These are completely separate and unrelated provisions.[3]

---

3. Respondent emphasizes that the two main provisions of Chapter 397 are codified in the same Article, while petitioners note that the two sections were codified in separate titles of the Corporations & Associa-

We resolved a related argument in *Porten Sullivan Corp.*, when we held unconstitutional another enactment of the General Assembly dealing with two completely different functions of the same general entity, a county council. The Act in question in *Porten Sullivan Corp.* had purported to extend local taxation authority in Prince George's County, while, at the same time, imposing ethics regulations on the County Council members. As in the present case, the ethics provisions had failed as an earlier, separate bill. Adding the ethics provisions to the bill generating tax revenue presumably was intended to bypass opposition. We noted:

> The ethics legislation requiring the disqualification of Prince George's County Councilmembers ... is similarly distinct from those portions of the Act that extend certain taxing authority for one year. The "ethics" provisions are unrelated to raising revenue for county government operations. Moreover, while the "tax" provisions are grants of authority to the County Council, the "ethics" provisions are not.... [T]he "ethics" portion of the Act does not deal with authority or discretionary activity by the Council; it simply imposes the "ethics" requirements on that body....

> This legislation does not deal, in any general way, with the County Council. It contains two unrelated and disparate sets of provisions, one imposing mandatory "ethical" requirements on Councilmembers and certain entities that appear before the Council in zoning matters; the other extending the Council's authority to impose certain taxes. The two disparate subjects are not transformed into one merely because there is authority in the Act to spend some of the tax revenues on "funding of the public ethics provisions," authority that to a considerable extent would have existed even without the language of Chapter 244. No one has been able to point to any particular county funding

---

tions Article. In determining the germaneness of the two provisions, this Court is not primarily concerned with where they are codified, but with whether they are genuinely closely related, how they function and what they regulate.

provision that requires money to be used for "ethics" measures....

....

... [The Act] does not provide broadly for the structure and organization of Prince George's County government, nor are the "tax" provisions and the "ethics" provisions "closely connected" or dependent upon each other. Nor, we might add, does its title suggest that the general structure and organization of Prince George's County are involved.... Obviously, an article dealing with all the powers, duties, and functions of an entire county, with the close interrelationships demanded of its several provisions, is an appropriate single subject. But that is not the sort of legislation we have here. [Citation omitted.]

*Porten Sullivan Corp.*, 318 Md. at 404–05, 568 A.2d at 1119–20. We ultimately noted that "the delegates from Prince George's County were put in precisely the position from which the one-subject clause was intended to protect them: the necessity 'for a legislator to acquiesce in [a possibly] undesirable bill in order to secure useful and necessary legislation.' " *Id.* at 409, 568 A.2d at 1122 (quotation omitted) (alteration in original). Because the law "contravene[d] the policy underlying the one-subject clause," and "contain[ed] two distinct and incongruous subjects," we held it was unconstitutional under Article III, section 29. *Id.* Much the same thing has occurred in the case at bar. The violation of the one-subject rule resulted in the primary bill's sponsor voting against his own bill. The one-subject rule is designed, in part, to protect legislators from having to make such choices.[4]

---

**4.** Our holding in *Porten Sullivan Corp., supra,* however, did not stop the General Assembly from later engrafting the same Prince George's County ethics regulations onto another bill dealing with planning and zoning authority in Montgomery County. In *State v. Prince Georgians for Glendening,* 329 Md. 68, 75–76, 617 A.2d 586, 589 (1993), we held: [T]hese two pieces of legislation addressed distinct and separate issues. H.B. 937 was concerned with the administration of planning and zoning in Montgomery County.... S.B. 701, on the other hand, related to ethics and election standards of local officials of Prince George's County.... [T]he planning and zoning authority of Mont-

As we have said, the two provisions in 1998 Maryland Laws, Chapter 397, are also "distinct and separate," i.e., not germane. Section 1 of the Act deals, generally, with resident agents of all corporations and other covered entities by protecting persons from being appointed as resident agents without their consent. Section 2 of the Act regulates directors of investment companies only and protects those companies from shareholders' derivative suits by expanding the situations in which their directors' interests are considered "independent" under Maryland law. These are two completely different provisions, the latter of which, though previously voted down by the Senate Judicial Proceedings Committee, was engrafted onto the former. This is precisely the type of legislative action Article III, section 29 was designed to prevent.

■ Finally, we address the State's attempt to distinguish *Porten Sullivan Corp.* and *Prince Georgians* by arguing that, unlike the tax and zoning measures in those cases, the resident agent bill in this case was not "vital" legislation. According to the State, any legislator who was opposed to the investment director provision presumably would not have voted for the consolidated bill just to preserve the resident agent provision. As we noted in *Porten Sullivan Corp.*, 318 Md. at 408, 568 A.2d at 1121, one purpose of the single-subject rule is "[t]o avoid the necessity for a legislator to acquiesce in a bill he or she opposes in order to secure useful and necessary legislation [and] to prevent the engrafting of foreign matter on a bill, which foreign matter might not be supported if offered independently." This is clearly what happened in this case. The record shows that the "foreign matter" of the bill—the investment director provision—was not supported indepen-

gomery County ... has no relation to the ethical standards applied to the Prince George's County Council....

We reach only one reasonable conclusion, that the Montgomery County planning and zoning provisions and the Prince George's County ethics and election standards married by Ch. 643 are indeed "distinct and incongruous" and "distinct and separate." Consequently, Ch. 643 of the Acts of 1992 violates the one-subject mandate of Article III, § 29 of the Maryland Constitution.

dently because it had already been voted down by the Senate Judicial Proceedings Committee. The State argues that because a number of Senators voted against the final bill, including the original sponsor of the resident agent bill, the bill, as it related to resident agents, must not have been necessary. To the contrary, the number of dissenting legislators, including the bill's sponsor, may well indicate that the investment director provisions were so distasteful to those Senators that they were willing to vote against a presumably more popular and useful measure. In any event, the "single-subject" rule is a constitutional requirement that applies generally to the legislative process and does not depend for its vitality on which, or how many, legislators believe a particular bill is important or necessary. Presumably, all statutes are designed to serve a valid public purpose. All are required to do so.

The evidence in the record indicates to this Court that the Legislature was aware that they had engrafted an "eleventh-hour" measure containing a separate and distinct function to a previously single-subject bill. This was an act in violation of Article III, section 29. As such, those provisions in respect to directors engrafted on Senate Bill 468, section 2 and 3 of 1998 Maryland Laws, Chapter 397, now codified as section 2–405.3, Corporations and Associations Article, are unconstitutional, null and void.

### III. Severability

█ Maryland Code (1957, 1998 Repl.Vol.), Article 1, section 23 states:

The provisions of all statutes enacted after July 1, 1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent.

1998 Maryland Laws, Chapter 397 did not contain any provision limiting the severability of its sections. The provisions relating to resident agents in section 1 are complete and capable of execution without the existence of the provisions governing directors of investment companies found in sections 2 and 3. Thus, in holding that Chapter 397, sections 2 and 3 were passed in an unconstitutional manner and are thus unconstitutional, null and void, we also hold that they are severable from the remainder of the Act, i.e., section 1.[5]

We note that the Legislature is in session as of the filing of our opinion. If it chooses to address this issue again, and its rules permit, it has the power to do so.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR ENTRY OF A DECLARATORY JUDGMENT IN ACCORDANCE WITH THIS OPINION; RESPONDENT TO PAY THE COSTS.**

---

**5.** Section 3 made the independent director provisions of section 2 retroactive.