*Ernest and Maryann Elsberry v. Stanley Martin Companies, LLC*, No. 6, September Term, 2022.  Opinion by Hotten, J.

**STATUTORY INTERPRETATION – REAL PROPERTY – MD. CODE ANN., REAL PROP. ARTICLE § 14-117 – ESTIMATED COSTS OF DEFERRED WATER AND SEWER CHARGES**

Section 14-117(a)(3)(i) of the Real Property Article of the Maryland Code provides that a seller of residential real property in Prince George's County must provide the purchaser certain disclosures in the initial contract of sale, including the estimated cost of any deferred water and sewer charges for which the purchaser may become liable.  Section 14-117(a)(3)(ii) limits a seller to a schedule of charges for the amortized water and sewer costs to a charge period no longer than twenty years from the date of initial sale.

Petitioners purchased property in Charles County from Respondent, whereby Respondent prescribed a thirty-year amortization period for the property's water and sewer assessments.  Petitioners challenged the duration of the amortization period under § 14-117(a)(3)(ii).  The Court of Appeals held that the plain language of § 14-117(a)(3)(ii), when viewed in context of the entire statutory scheme, indicates that the twenty-year amortization limit on deferred water and sewage costs only applies to Prince George's County.  The Court, therefore, analyzed the legislative history to confirm our plain text interpretation.  The Court concluded that the legislative history of § 14-117(a)(3)(ii) confirms our plain language interpretation.  The legislative history indicates that the General Assembly intended for the amortization provision to only apply to Prince George's County.  As such, the Court held that the Court of Special Appeals correctly interpreted § 14-117(a)(3)(ii), and the circuit court correctly dismissed the action.

Circuit Court for Charles County
Case No.: C-08-CV-20-000406
Argued: September 8, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 6

September Term, 2022
_____

ERNEST AND MARYANN ELSBERRY

v.

STANLEY MARTIN COMPANIES, LLC
_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Eaves,
Getty, Joseph M.,
 (Senior Judge, Specially Assigned)

JJ.
_____

Opinion by Hotten, J.
_____

Filed: December 1, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Md. Code Ann., Real Property ("Real Prop.") § 14-117(a)(3)(i) requires a seller of residential real property in Prince George's County to provide the purchaser with certain disclosures in the initial contract of sale, including the estimated cost of any deferred water and sewer charges for which the purchaser may become liable. Deferred water and sewer assessments are usually provided in the form of a declaration and recorded in the applicable county's land records. Real Prop. § 14-117(a)(3); Joseph N. Schaller & Shannon D. Sentman, *Private Water & Sewer Assessment Companies*, Md. Bar J. 36, 37 (2006). The declaration, in turn, reimburses the seller for the costs related to the construction and installation of the water and sewer systems. Real Prop. § 14-117(a)(3); *Sullivan v. Caruso Builder Belle Oak, LLC*, 251 Md. App. 304, 310, 253 A.3d 1142, 1145 (2021); Schaller & Sentman, *supra*, at 37. While Real Prop. § 14-117(a)(3)(ii) permits the seller to establish amortized water and sewer costs, the seller cannot impose upon the purchaser a repayment period for a duration longer than twenty years from the date of initial sale. Real Prop. § 14-117(a)(3)(ii). We are asked to determine whether the twenty-year deferred water and sewer assessment amortization limit, pursuant to Real Prop. § 14-117(a)(3)(ii), applies to the entire state or exclusively to properties located within Prince George's County.

The present dispute arose over the purchase of residential real property in Charles County, Maryland. According to the real estate purchase agreement, the purchased property was subject to a declaration, which prescribed, at the discretion of the seller, a thirty-year collection period for the property's water and sewer assessments. The purchasers filed suit, alleging that the seller violated Real Prop. § 14-117(a)(3)(ii) by imposing an amortized water and sewer charge longer than twenty years after the initial

date of sale of the property. The seller moved to dismiss, asserting that Real Prop. § 14-117(a)(3)(ii) only applies to real property located in Prince George's County. Following a hearing, the Circuit Court for Charles County granted the seller's motion to dismiss.

The purchasers appealed to the Court of Special Appeals, which affirmed in an unpublished opinion. *Elsberry v. Stanley Martin Cos., LLC*, No. 172 Sept. Term, 2021, 2022 WL 94616 (Md. Ct. Spec. App. Jan. 10, 2022). The Court of Special Appeals declined to extend the geographic application of Real Prop. § 14-117(a)(3)(ii) beyond Prince George's County. *Id.* at *6. We granted *certiorari* on May 9, 2022, *Elsberry v. Stanley Martin Cos., LLC*, 478 Md. 510, 275 A.3d 345 (2022), to address the following questions presented, which we have rephrased as follows:[1]

> 1. Whether the Court of Special Appeals erred by determining that the "Prince George's County—Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014 PG 413-14[,]" codified in part at Real Prop. § 14-117(a)(3)(ii), is limited to residential real property located in Prince George's County?

---

[1] This Court has discretion to rephrase questions presented. *See, e.g.*, *Nash v. State*, 439 Md. 53, 64, 94 A.3d 23, 29 (2014). The original questions as presented in the Petition for Writ of *Certiorari* are as follows:

> [1.] Whether a court may rely on legislative history unrelated to the specific statutory text at issue to override the consumer protections granted in the plain language and tabulation of [Real Prop.] §14-117(a)(3), an unambiguous remedial statute?

> [2.] Whether the Court of Special Appeals of Maryland violated Article III, Section 29 of the Maryland Constitution by using the title of the bill "Prince George's County – Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014" to contradict the plain language of [Real Prop.] § 14-117(a)(3)(ii)?

2. Whether the Court of Special Appeals erred by consulting the legislative history of Real Prop. § 14-117(a)(3)(ii) to help ascertain whether the intent of the General Assembly was to limit the effect of the statutory provision to residential real property located in Prince George's County?

3. Whether the Court of Special Appeals erred by considering whether its plain text interpretation of Real Prop. § 14-117(a)(3)(ii) would violate the "one subject rule" for bill titles pursuant to Art. III, § 29 of the Maryland Constitution?

We answer these questions in the negative and shall affirm the judgment of the Court of Special Appeals.

## FACTS AND PROCEDURAL BACKGROUND

### *Relevant Facts*

On April 5, 2019, Petitioners, Ernest and Maryann Elsberry (the "Elsberrys") entered into a New Home Sales Contract (the "Purchase Agreement") with Respondent Stanley Martin Companies, LLC[2] ("Stanley Martin") for the purchase of residential real property and construction of a new home in Charles County (the "Property"). According to the Purchase Agreement, the Property was subject to a Declaration of Deferred Water and Sewer Charges (the "Declaration") which required the Elsberrys to pay Stanley Martin annual installments in the amount of $550 for thirty years, subject to a six percent interest rate, to reimburse Stanley Martin for the construction and installation of water and sewer systems. The Declaration was recorded in the Land Records of Charles County, and serves

---

[2] The Purchase Agreement identifies SM Hamilton, LLC as the "Seller" and Stanley Martin Companies, LLC as the "Builder[.]" SM Hamilton, LLC merged into Stanley Martin after the purchase of the Property.

as a lien on the Property.  Stanley Martin conveyed the Property to the Elsberrys on May 9, 2019, and the Elsberrys made a prorated initial payment pursuant to the Declaration.

On September 17, 2020, the Elsberrys filed suit in the Circuit Court for Charles County, alleging, *inter alia*,[3] that Stanley Martin's Declaration violated Real Prop. § 14-117(a)(3)(ii) by imposing a deferred water and sewer charge for a period of *thirty years* following the date of the initial sale of the Property.[4]  According to the Elsberrys, Real Prop. § 14-117(a)(3)(ii) applies to *all* counties in Maryland—not just Prince George's County—and prohibits the amortization of water and sewer charges for more than *twenty years*; therefore, Stanley Martin's Declaration violates this provision.

On October 5, 2020, Stanley Martin filed a motion to dismiss, asserting that Real Prop. § 14-117(a)(3)(ii) only applies to property located in Prince George's County.

---

[3] The Elsberrys brought four causes of action against Stanley Martin, including unjust enrichment (count one), violation of Maryland's Consumer Protection Act (count two), breach of contract (count three), and violation of Real Prop. § 14-117(a)(3)(ii) (count four).  Since the Elsberrys do not challenge the dismissal of claims one through three, we limit our focus to count four.

[4] Real Prop. § 14-117(a)(3) provides that:

(i) *In Prince George's County*, a contract for the initial sale of residential real property for which there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure . . . .

(ii) A person or entity establishing water and sewer costs for the initial sale of residential real property may not amortize costs that are passed on to a purchaser by imposing a deferred water and sewer charge *for a period longer than 20 years* after the date of the initial sale.

(Emphasis added).

4

Stanley Martin maintained that the Elsberrys' claim is predicated on a misreading of Real Prop. § 14-117(a)(3)(ii), thereby "attempt[ing] to extend [its] reach [] beyond Prince George's County to manufacture a claim in Charles County that was never intended by the legislature . . . ." Accordingly, since the Property is in Charles County, Stanley Martin contended that the Elsberrys' complaint failed to state a claim upon which relief may be granted.

### *Legal Proceedings*

### A. Circuit Court Proceedings

The Circuit Court for Charles County held a hearing on Stanley Martin's motion to dismiss on February 23, 2021. Following the hearing, the circuit court agreed with Stanley Martin and granted the motion. Upon review of Real Prop. § 14-117(a)(3), the court "noticed that the subsection little i, 14-117.A.3.i, directly states, *in Prince George's County* . . . and then goes on to list items that have to be contained in the disclosure statement." (Emphasis added). The court also recognized that "[t]he placement of the small Paragraph [(ii)] under small Paragraph [(i)], leads to the conclusion that this was intended . . . to be provided to residents of *Prince George's County only*." (Emphasis added). "Furthermore, . . . the title of the bills specifically state, in the first reading and the second reading, that the bills . . . applied to *Prince George's County only*." (Emphasis added). Upon review of "this bill, and looking that it applies to Prince George's County in the title and in the purpose of the bill, *it is hard to see how any legislator reviewing this would automatically assume that it applies to all counties*." (Emphasis added).

5

Ultimately, the circuit court "believe[d] the legislative history supports the interpretation of the Court [], *based upon its plain reading of the statute*, that [Real Prop. § 14-117(a)(3)(ii)] *is directly related to* [Real Prop. § 14-117(a)(3)(i)], and *relates to Prince George's County*." (Emphasis added). Therefore, on March 3, 2021, the court granted Stanley Martin's motion, dismissing the Elsberrys' claim. On April 2, 2021, the Elsberrys timely appealed to the Court of Special Appeals.

**B. Opinion of the Court of Special Appeals**

On January 10, 2022, the Court of Special Appeals affirmed the circuit court in an unreported opinion. *Elsberry*, 2022 WL 94616. The intermediate court concluded that the General Assembly intended Real Prop. § 14-117(a)(3)(ii) to apply to properties *only located within Prince George's County*—not statewide. *Id.* at *7.

The Court of Special Appeals began by examining the plain language of Real Prop. § 14-117(a)(3). *Id.* at *3. The court observed that subparagraph (i) contains the introductory phrase, "In Prince George's County[,]" which plainly limits its application to Prince George's County. *Id.* The court recognized that "[s]ubparagraph (ii)'s geographical reach, however, is less obvious[]" because "[s]ubparagraph (ii), unlike subparagraph (i), does not mention Prince George's County." *Id.* "It is, however, placed within a paragraph that otherwise relates only to Prince George's County – a construction not otherwise used in [Real Prop.] § 14-117." *Id.* After noting the ambiguity surrounding the geographical

6

scope of Real Prop. § 14-117(a)(3)(ii), the Court of Special Appeals turned to the legislative history to determine the intent of the General Assembly.[5] *Id.*

The Court of Special Appeals determined that the legislative history of Real Prop. § 14-117(a)(3)(ii) also demonstrated its geographical limitation to Prince George's County. *Id.* at *4. The court examined several sources to ascertain legislative intent, including, but not limited to, "the context of the bill, including the title and function paragraphs, the amendments to the legislation, as well as . . . the bill request form[.]" *Id.* (internal quotations and citation omitted). The court observed that "the title of an act is relevant to ascertainment of its intent and purpose[.]" *Id.* (citation omitted).

Real Prop. § 14-117(a)(3) was introduced to the General Assembly as House Bill 1043 ("HB 1043"). *Id.* HB 1043 was enacted in May 2014 as Chapter 441, entitled "Prince George's County – Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014[.]" *Id.* The court concluded that HB 1043's purpose paragraph "generally relat[es]

---

[5] At oral argument, the Elsberrys argued that the Court of Special Appeals never made an express finding that Real Prop. § 14-117(a)(3)(ii) was ambiguous, and therefore, erroneously used legislative history analysis to contravene the plain meaning of an unambiguous statute. We disagree with the Elsberrys' strict reading of the opinion and find at least two instances where the court decided Real Prop. § 14-117(a)(3)(ii) was ambiguous. First, the court rejected the Elsberrys' contention that the subparagraph was unambiguous. *Elsberry*, 2022 WL 94616, at *3 ("Even if [Real Prop.] § 14-117(a)(3) *is not ambiguous*, . . . we 'do not read statutory language in a vacuum[.]'") (emphasis added) (citation omitted). Second, the court provided in a footnote that "[w]hile we agree that [certain subsections of Real Prop § 14-117] *add to the ambiguity* of [Real Prop.] § 14-117(a)(3)(ii), we are not persuaded that they indicate legislative intent for [Real Prop.] § 14-117(a)(3)(ii) to apply beyond Prince George's County." *Id.* at *5 n.7 (emphasis added). The intermediate court could not have determined other subsections of Real Prop. § 14-117 *add* to the ambiguity of Real Prop. § 14-117(a)(3)(ii) without initially finding the subparagraph to be ambiguous.

7

to deferred water and sewer charges in Prince George's County[,]" and did not mention other counties. *Id.* HB 1043 was introduced to the General Assembly less than three months after the Legislative Task Force to Study Rates and Charges in the Washington Suburban Sanitary District (the "Task Force") submitted a report that specifically recommended limiting amortized water and sewer costs to twenty years in Prince George's County (the "Task Force Report"). *Id.* at *5.

The Elsberrys observed "that the language in [Real Prop.] § 14-117(a)(3)(ii) originated in [Real Prop.] § 14-117.1[,]" a statute limited to existing property in Prince George's County. *Id.* The Court of Special Appeals, nonetheless, was unpersuaded by the Elsberrys' argument that the relocation of statutory text from Real Prop. § 14-117.1 to Real Prop. § 14-117(a)(3)(ii) during the bill amendment process demonstrated an intent for the provision to apply beyond Prince George's County. *Id.* at *5–6. According to the court, both Real Prop. § 14-117.1 and Real Prop. § 14-117(a)(3)(ii) apply only to Prince George's County, consistent with its interpretation of the statutory text and legislative history. *Id.* at *6.

Finally, the Court of Special Appeals observed that adopting the Elsberrys' interpretation of Real Prop. § 14-117(a)(3)(ii) would lead to absurd, unreasonable, and unconstitutional results. *Id.* Extending the geographical reach of Real Prop. § 14-117(a)(3)(ii) beyond Prince George's County to all counties "would render the title of [HB 1043] – 'Prince George's County – Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014' – unconstitutionally misleading" because the statute would encompass a broader scope than expressed by its title. *Id.* (citing Md. Const. art. III, § 29)

8

("[E]very law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title[.]"). Ultimately, the Court of Special Appeals concluded that Real Prop. § 14-117(a)(3)(ii) was limited to Prince George's County and affirmed the circuit court's judgment. *Id.* at *7.

The Elsberrys filed a petition of *certiorari*, which we granted on May 9, 2022. *Elsberry*, 478 Md. at 510, 275 A.3d at 345.

### *The Contentions of the Parties*

#### A. The Elsberrys

The Elsberrys outlined three arguments on appeal: (1) the plain language of Real Prop. § 14-117(a)(3)(ii) applies statewide, (2) an analysis of the legislative history is not required, but if used, is inconclusive at best, and (3) HB 1043's title is not unconstitutionally misleading.

First, the Elsberrys contend that the plain text of Real Prop. § 14-117(a)(3)(ii) unambiguously prohibits amortization of water and sewer costs through deferred payments for a period longer than twenty years. While the Elsberrys admit that Real Prop. § 14-117(a)(3)(i) pertains exclusively to Prince George's County, the Elsberrys assert that Real Prop. § 14-117(a)(3)(ii) pertains to "real property located in *any* county, including, but not limited to, Prince George's County." According to the Elsberrys, the overall statutory scheme of Real Prop. § 14-117 and Real Prop. § 14-117.1 supports this notion. Specifically, the Elsberrys note that the General Assembly chose to geographically limit the application of certain provisions throughout Real Prop. § 14-117 "to a certain county or to certain counties." The omission of a geographic limitation in Real Prop. § 14-

9

117(a)(3)(ii) suggests, according to the Elsberrys, that the General Assembly intended for it to apply to all counties in Maryland.

The Elsberrys insist that this Court's "only role" is to determine what the General Assembly "*actually* said[]" and not what the General Assembly "*meant* to say[.]" The Elsberrys reiterate that "this Court has never interpreted a law to mean something contrary to the plain language unless . . . enforcing the plain language would lead to an absurd result." To the Elsberrys, holding otherwise "is tantamount to inserting words into the statute in order to make the statute express an intention that was not evidenced in its original form." According to the Elsberrys, Stanley Martin's interpretation of Real Prop. § 14-117(a)(3)(ii) would require this Court to impermissibly stretch the meaning of the statute's plain text and add verbiage not included by the General Assembly. Such an action, the Elsberrys assert, would encroach upon the legislature. Instead, the Elsberrys insist Real Prop. § 14-117 is "clearly remedial" and must be "construed liberally" to prevent private developers from imposing "excessively long" water and sewer assessments on property owners.[6] Thus, the Elsberrys contend that "[t]he only reasonable interpretation [of Real Prop. § 14-117(a)(3)(ii)] is the literal interpretation," which they have advanced.

Next, the Elsberrys argue that this Court need not consult the legislative history, but should we decide to do so, the legislative history neither confirms nor contradicts the

---

[6] *But see The Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) ("Although remedial statutes are . . . to be given a liberal construction, the predominant goal of the Court is to ascertain and implement the legislative intent . . . by considering the language used by the Legislature and giving that language a plain and common sense meaning.").

10

unambiguous language of Real Prop. § 14-117(a)(3)(ii). The Elsberrys assert that "[t]he statutory text *does not include* [HB 1043]'s title[;]" therefore, this Court may not use the title as an aide to interpret the statutory text. (Emphasis added). During oral argument, the Elsberrys contended that the short title constitutes part of the legislative history, so it should not have been considered as part of the Court of Special Appeals' plain text analysis. If this Court reaches the legislative history, the Elsberrys argue that the short title (which the Elsberrys concede begins with "Prince George's County") is not dispositive, but rather is "one of three components that make up the entire title of a bill[.]" The Elsberrys also note that the changes made to HB 1043 between the First Reading and the Second Reading indicate that Real Prop. § 14-117(a)(3)(ii) applies statewide. For example, the removal of the language "in the county" (indicating Prince George's County) from the purpose paragraph, supports this interpretation. The Elsberrys maintain this removal "reflects the fact that the General Assembly moved the Twenty-Year Provision from [Real Prop.] § 14-117.1 (where it only applied 'in the county') to [Real Prop.] § 14-117 (where it is not limited to any particular county)."

Assuming, *arguendo*, that this Court considers HB 1043's legislative history, the Elsberrys request that the entire legislative history, not selective portions, be examined. According to the Elsberrys, the Court of Special Appeals erroneously "elevated" certain portions of legislative history over the plain language of Real Prop. § 14-117(a)(3)(ii), which this Court has never sanctioned "unless the legislative history clearly contradicted the plain text . . . *and* this Court also determined that the General Assembly made a patent

11

drafting error[]" that would lead to an absurd result. The Elsberrys maintain that neither occurred in the case at bar, so the plain text of Real Prop. § 14-117(a)(3)(ii) should prevail.

The Elsberrys also criticize Stanley Martin's and the Court of Special Appeals' reliance on the Task Force Report. Specifically, the Elsberrys argue that the General Assembly was not bound by the Task Force's thirteen recommendations or its geographic representation. Rather, the Elsberrys assert that the General Assembly intended the statute to protect property owners "*in all counties* from the excessively long amortization periods that private developers impose throughout the state." The removal of the words "Prince George's County" from the Second Reading of HB 1043, the Elsberrys explain, further supports the General Assembly's intent to apply Real Prop. § 14-117(a)(3)(ii) statewide.

Lastly, the Elsberrys assert that construing Real Prop. § 14-117(a)(3)(ii) to apply statewide would not render the title of HB 1043 constitutionally misleading. According to the Elsberrys, HB 1043's entire title includes an accurate reference to Real Prop. § 14-117(a)(3)(ii) and "provides sufficient notice that [it] is not limited to Prince George's County." The Elsberrys direct us to HB 1043's short title, purpose paragraph, and function paragraphs. Upon review, the Elsberrys maintain that the General Assembly intentionally limited certain portions of the entire title to Prince George's County, but notably did not limit the twenty-year provision in the Second Reading. For example, in the First Reading of the purpose paragraph, HB 1043 states: "prohibiting a person *in the county* that is incurring certain water and sewer costs from amortizing costs passed on to a purchaser for more than a certain period of time[.]" (Emphasis added). The Second Reading of the purpose paragraph states: "prohibiting a person or entity establishing certain water and

12

sewer costs for the initial sale of residential real property from amortizing certain costs for more than a certain period of time[.]" According to the Elsberrys, the omission of the words "in the county" from the purpose paragraph, which constitutes one part of HB 1043's title, demonstrates that the General Assembly did not intend for the provision to be geographically limited to Prince George's County.

Therefore, the Elsberrys request this Court to reverse the Court of Special Appeals.

### B. Stanley Martin

Stanley Martin outlines three arguments in response: (1) Real Prop. § 14-117(a)(3)(ii) is not unambiguous, (2) HB 1043's legislative history demonstrates that the twenty-year deferred water and sewer charge limitation applies exclusively to Prince George's County, and (3) the overall statutory scheme bolsters its position.

First, Stanley Martin asserts that Real Prop. § 14-117(a)(3)(ii) is not unambiguous. Real Prop. § 14-117(a)(3) starts with "In Prince George's County" and references no other county. Stanley Martin argues that "[f]rom this fact alone, one could infer that [Real Prop.] § 14-117(a)(3) applies in its entirety only to Prince George's County." Real Prop. § 14-117(a)(3) is divided into two subsections, (i) and (ii), both of which relate to deferred water and sewer charges on real property. Therefore, Stanley Martin contends it is "logical" for romanette (ii) to also apply only to Prince George's County. In contrast, the Elsberrys argue that the phrase "In Prince George's County" only applies to romanette (i), and the twenty-year deferred water and sewer limitation under romanette (ii) extends statewide. With more than one reasonable interpretation of the statute, Stanley Martin contends this Court "can and should use legislative history" to determine the meaning of the statute.

13

Next, according to Stanley Martin, the legislative history demonstrates that the twenty-year deferred water and sewer charge limitation applies exclusively to Prince George's County. Stanley Martin refers this Court to the Task Force Report. The Task Force studied private developers' deferred water and sewer rates in Montgomery and Prince George's Counties. Relying upon its findings, the Task Force compiled thirteen recommendations and, accordingly, submitted them to the General Assembly. Recommendation 7, for example, "[r]equire[d] a contract for the sale of new residential real property *in Prince George's County* to contain a disclosure statement regarding the estimated cost of any deferred water and sewer charges for which the purchaser may become liable." (Emphasis added). Likewise, as Stanley Martin identifies, Recommendation 9 proposed "[p]rohibit[ing] a person from amortizing for more than 20 years from the date of the initial sale the deferred water and sewer costs that are passed onto a purchaser. (Single-family residential property *in Prince George's County* improved by four or fewer single-family units)." (Emphasis added). Stanley Martin notes that this recommendation is almost identical to Real Prop. § 14-117(a)(3)(ii). This indicates to Stanley Martin that "[t]he General Assembly relied on the Task Force's recommendations when framing and reviewing HB 1043."

Stanley Martin maintains that the short title and text of HB 1043 further confirms that Real Prop. § 14-117(a)(3)(ii) only applies to Prince George's County. As previously mentioned, HB 1043's short title is "Prince George's County—Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014 PG 413-14[.]" HB 1043's short title, Stanley Martin argues, is persuasive evidence of the General Assembly's intent. Specifically,

Stanley Martin notes that HB 1043's short title never changed between its First and Second Reading, and the enrolled law, Chapter 441, maintains the same title as the original bill. Stanley Martin also directs this Court to the Department of Legislative Services' Legislative Drafting Manual, which provides that "[i]f a bill relates to only one or two counties, their names should appear first, with a word or two about the subject matter after the dash." *Legislative Drafting Manual 2015*, DEP'T OF LEGIS. SERVS., at 36 (2014) ["*Legislative Drafting Manual*"], https://msa.maryland.gov/megafile/msa/speccol/sc5300/sc5339/000113/021000/021150/unrestricted/20151315e.pdf, *archived at* https://perma.cc/B86D-LWQL. "HB 1043's title begins with 'Prince George's County,' followed by a dash and a few words about the bill's purpose." Therefore, Stanley Martin asserts that, in line with the Legislative Drafting Manual, HB 1043's short title reflects "clear intent by the General Assembly for the bill to apply only to Prince George's County." HB 1043's local bill number "PG 413-14" also indicates that the Prince George's County legislative delegation "has charge of the bill[.]"

Additionally, Stanley Martin claims that HB 1043's purpose paragraph further underlines its intent to limit application to Prince George's County. The purpose paragraph references either "Prince George's County" or "in the county" several times, including the final phrase that the bill "generally relat[es] to deferred water and sewer charges in Prince George's County." (Emphasis omitted). Contrary to the Elsberrys, Stanley Martin argues there is nothing in the purpose paragraph, nor in the entirety of HB 1043's file, that evidences the General Assembly's intent to extend HB 1043 to any other county besides Prince George's County. Between the First and Second Reading, the phrase "in the

15

county" was removed from the clause pertaining to the deferred water and sewer costs limit, but this omission, Stanley Martin argues, does not signify that the bill is no longer limited to Prince George's County. Rather, it was part of a general revision to track the proposed statutory language.

Stanley Martin contends that the changes between HB 1043's First and Second Reading provide additional evidence that the General Assembly intended for HB 1043 to apply only to Prince George's County. As previously discussed, the disputed language of Real Prop. § 14-117(a)(3)(ii) originally resided within Real Prop. § 14-117.1. Real Prop. § 14-117.1 pertains to single-family residential property within Prince George's County. In the Second Reading of HB 1043, the Prince George's County delegation moved the salient provision to its current location, Real Prop. § 14-117(a)(3)(ii). In short, Stanley Martin observes that the disputed language moved from a statutory section that exclusively pertains to Prince George's County to another section that also only references Prince George's County. To Stanley Martin, there is no indication that the Prince George's County delegation, or any other county delegation, wished to expand the scope of the provision beyond Prince George's County.

Finally, Stanley Martin argues that the overall statutory scheme of Real Prop. § 14-117 further supports its interpretation. Contrary to the Elsberrys' position, and as demonstrated in other subsections of the statute, Stanley Martin asserts that "the mere absence of county-specific language in [Real Prop.] § 14-117(a)(3)(ii) is not reflective of any legislative intent to expand the geographical reach of the statute." In Stanley Martin's opinion, the Court of Special Appeals' "holistic approach" properly considered the *entire*

16

context of the bill—including the bill itself, the title, function paragraphs, and legislative amendments—in its analysis. Therefore, Stanley Martin asks this Court to affirm the Court of Special Appeals.

**DISCUSSION**

***Standard of Review***

This Court reviews the grant of a motion to dismiss for failure to state a claim *de novo*. *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 284, 177 A.3d 709, 714 (2018); *Lamson v. Montgomery Cnty.*, 460 Md. 349, 360, 190 A.3d 316, 323 (2018). Whether the circuit court was legally correct in dismissing the Elsberrys' complaint turns on a question of statutory interpretation. *Sullivan*, 251 Md. App. at 317, 253 A.3d at 1149. "Where questions of law and statutory interpretation are presented, this Court reviews them *de novo* . . . ." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 373, 250 A.3d 197, 207 (2021) (citations omitted). We first conduct a statutory analysis of Real Prop. § 14-117(a)(3)(ii). *Id.* at 376, 250 A.3d at 209; *Sullivan*, 251 Md. App. at 317, 253 A.3d at 1149.

**Analysis**

**A. The plain text of Real Prop. § 14-117(a)(3)(ii), when viewed in context of the entire statutory scheme, indicates that the twenty-year amortization limit on deferred water and sewage costs only applies to Prince George's County.**

Well-settled principles of statutory construction guide our interpretation of Real Prop. § 14-117(a)(3)(ii). *Lyles v. Santander Consumer USA Inc.*, 478 Md. 588, 601, 275 A.3d 390, 397 (2022). "[W]e start with the cardinal rule of statutory interpretation—to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute." *Wheeling*, 473 Md. at 376, 250 A.3d at 209 (citing *75-80 Properties, LLC v.*

17

*RALE, Inc.*, 470 Md. 598, 623, 236 A.3d 545, 559 (2020)); *Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18, 28 (2010) (citations omitted). "To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute." *Lockshin*, 412 Md. at 275, 987 A.2d at 28 (citations omitted). This Court has stated that "[t]he 'meaning of the plainest language' is controlled by the context in which it appears." *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987) (quoting *Guardian Life Ins. Co. of Am. v. Ins. Comm'r of State of Md.*, 293 Md. 629, 642, 446 A.2d 1140, 1147 (1982)). This Court need not resort to other rules of statutory construction when the plain language of the statute unambiguously communicates the intent of the General Assembly. *Lockshin*, 412 Md. at 275, 987 A.2d at 28–29 (citations omitted).

Consideration of the plain meaning of the statutory language does not entail a bare, isolated, or literal reading of the statutory language. *See id.* at 275–76, 987 A.2d at 29 (citations omitted). This Court construes the statute "'as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Wheeling*, 473 Md. at 376, 250 A.3d at 209 (quoting *Koste v. Town of Oxford*, 431 Md. 14, 25–26, 63 A.3d 582, 589 (2013)). Still, this Court will neither "add nor delete language . . . to reflect an intent not evidenced in the plain . . . language . . . ." *Lockshin*, 412 Md. at 275, 987 A.2d at 29 (citations omitted). Nor does this Court construe statutory language "with forced or subtle interpretations that limit or extend its application." *Id.* (citations omitted); *see also Price v. State*, 378 Md. 378, 388, 835 A.2d 1221, 1226 (2003) ("We

18

cannot assume authority to read into the Act what the [General Assembly] apparently deliberately left out.") (citation omitted).  Nevertheless,

> [i]t is important . . . to keep in mind that the meaning of the plainest language in a statute may be controlled by the context, and if the language is fairly susceptible of more than one construction, the Court may seek the legislative intention by considering the facts of contemporary history, the prior state of the law, and the particular evil, abuse, or defect which the statute was designed to correct and the remedy which was intended.

*Dep't of Tidewater Fisheries v. Sollers*, 201 Md. 603, 611, 95 A.2d 306, 309 (1953). Therefore, our case law demonstrates that the plainest language *does not mean limiting its construction of a particular statutory provision to its bare text alone*.  As this Court explained in *Lockshin*, "[w]e . . . do not read statutory language in a vacuum, *nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone*."  *Lockshin*, 412 Md. at 275, 987 A.2d at 29 (citations omitted) (emphasis added). "Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly] in enacting the statute."  *Id.* at 276, 987 A.2d at 29 (citations omitted).  "We presume that [the General Assembly] intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope."  *Id.* (citations omitted).

Contrary to the Elsberrys' assertion, this Court does not confine its plain text analysis to the literal text.  We "are not limited to the words of the statute as they are printed in the Annotated Code."  *Kaczorowski*, 309 Md. at 514–15, 525 A.2d at 632.  In fact, as

this Court stated in *Kaczorowski*, "[t]he *circumstances of the enactment of particular legislation may persuade a court* that [the General Assembly] *did not intend words of common meaning to have this literal effect*." *Id.* (emphasis added) (internal citation omitted). "This process allows courts to discern that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Patton v. Wells Fargo Fin. Maryland, Inc.*, 437 Md. 83, 97–98, 85 A.3d 167, 175 (2014) (internal citation omitted). Similarly,

> [w]here the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, *a court must resolve the ambiguity by searching for legislative intent in other indicia*, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process.

*Lockshin*, 412 Md. at 276, 987 A.2d at 29 (citations omitted). "In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions." *Id.* (citations omitted). As this Court explained in *Building Materials Corp. of America v. Board of Education of Baltimore County*,

> [a] preliminary matter . . . is to identify the statutory or regulatory language to be construed. Consider the well-known phrase "She loves me; she loves me not." If one focuses only on the first clause, the plain meaning appears clear—no need for further exploration. Similarly, if one considers only the second clause, the meaning seems equally clear though quite different. *But when the sentence is considered as a whole, there is ambiguity and one must know more than the language alone to discern its meaning. Context and history matter.* As this Court has said, "the meaning of the plainest language is controlled by the context in which it appears."

428 Md. 572, 585, 53 A.3d 347, 354–55 (2012) (emphasis added) (footnote omitted).

At the outset, this Court begins its analysis with Real Prop. § 14-117(a), which provides that:

(a)(1) In this subsection, "water and sewer authority" includes a person to which the duties and responsibilities of the Washington Suburban Sanitary Commission have been delegated by a written agreement or in accordance with a local ordinance.

(2) A contract for the initial sale of improved, residential real property to a member of the public who intends to occupy or rent the property for residential purposes shall disclose the estimated cost, as established by the appropriate water and sewer authority, of any deferred water and sewer charges for which the purchaser may become liable.

(3)(i) *In Prince George's County*, a contract for the initial sale of residential real property for which there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure that includes:

1. The existence of the deferred private water and sewer assessments;
2. The amount of the annual assessment;
3. The approximate number of payments remaining on the assessment;
4. The amount remaining on the assessment, including interest;
5. The name and address of the person or entity most recently responsible for collection of the assessment;
6. The interest rate on the assessment;
7. The estimated payoff amount of the assessment; and
8. A statement that payoff of the assessment is allowed without prepayment penalty.

(ii) A person or entity establishing water and sewer costs for the initial sale of residential real property *may not amortize* costs that are passed on to a purchaser by imposing a deferred water and sewer charge *for a period longer than 20 years* after the date of the initial sale.

(4) If the appropriate water and sewer authority has not established a schedule of charges for the water and sewer project that benefits residential real property or if a local jurisdiction has adopted a plan to benefit residential real property in the future, the contract for the initial sale of the residential real property shall disclose that fact.

(5)(i) This paragraph does not apply in a county that has adopted a disclosure requirement that is substantially similar to the disclosure requirement in subparagraph (ii) of this paragraph.

(ii) A contract for the resale of residential real property that is served by public water or wastewater facilities for which deferred water and sewer charges have been established by a recorded covenant or declaration shall contain a notice in substantially the following form[.][7]

(Emphasis added).

The challenged language sits within a paragraph, (a)(3), split into two subparagraphs, (a)(3)(i) and (a)(3)(ii). The first subparagraph, denoted by romanette (i), begins with the phrase, "In Prince George's County[.]" Real Prop. § 14-117(a)(3)(i). This subparagraph requires sellers to provide purchasers, in the initial contract of sale, with certain disclosures regarding the deferred water and sewer costs. *Id*. § 14-117(a)(3)(i)(1)–(8). The second subparagraph, indicated by romanette (ii), contains the challenged language prohibiting the amortization of water and sewer costs for a period longer than twenty years. *Id*. § 14-117(a)(3)(ii).

The literal text of Real Prop. § 14-117(a)(3)(ii) does not include any geographical limiting language. If the language, "[a] person or entity . . . may not amortize costs . . . for a period longer than 20 years[,]" was surgically extracted from the statute and read in isolation, it could be reasonably construed to apply generally to any person or entity in Maryland. This textualist methodology of statutory interpretation advanced by the Elsberrys is not reinforced by our case law. Our method of statutory construction is

---

[7] The "following form" language has been omitted for concision.

22

designed to avoid "examin[ing] the trees so closely that we do not see the forest[.]" *Kaczorowski*, 309 Md. at 514, 525 A.2d at 632. As previously stated, the "plainest language" inquiry requires construction of the challenged language in the context of the entire statute and its legislative purpose. *See Sollers*, 201 Md. at 611, 95 A.2d at 309; *Lockshin*, 412 Md. at 275, 987 A.2d at 29; *Bldg. Materials Corp. of Am.*, 428 Md. at 585, 53 A.3d at 354–55.

Once the plain text of the statute is viewed in the context of its broader statutory scheme and its entire title as enacted by the General Assembly, it is clear that Real Prop. § 14-117(a)(3) applies only to Prince George's County. The Elsberrys contend that both Stanley Martin and the Court of Special Appeals read the statute "backwards[,]" and that (a)(3)(ii) should be read first as a generally applicable provision while (a)(3)(i) is specifically limited to Prince George's County. There is no statutory text supporting the Elsberrys' reading of the statute, which belies drafting conventions and conflicts with a basic principle of statutory construction: reading and applying terms from top to bottom. *See In re Walker*, 473 Md. 68, 82–83, 248 A.3d 981, 989–90 (2021) (construing the meaning of a term from top to bottom).

It is true that an introductory sentence or header usually pertains to everything that follows until the next paragraph, section, or heading. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 79, 115 S. Ct. 464, 472 (1994) (Stevens, J., concurring) (noting that "the normal, commonsense reading of a subsection" is for the introductory term to modify the remainder of the subsection). The Maryland Style Manual also recommends "plac[ing] an exception or limitation at the earliest possible point in the statutory unit to

which it applies[,]" unless doing so "would impair the clarity of the statute[.]" *Maryland Style Manual for Statutory Law*, DEP'T LEGIS. SERVS., at 41 (Oct. 2018) ["*Maryland Style Manual*"], https://dls.maryland.gov/pubs/prod/LegisBillDrafting/MarylandStyleManualforStatutory Law2018.pdf, *archived at* https://perma.cc/L4ES-QXFP.  Thus, following the Maryland Style Manual, the clearest way for the General Assembly to have ordered Real Prop. § 14-117(a)(3) to make clear that both subsections apply exclusively to Prince George's County would have been to place the phrase "In Prince George's County" outside *both* romanettes (i) and (ii) as follows:

> (3) *In Prince George's County*, (i) a contract for the initial sale of residential real property for which there are deferred private water and sewer assessments recorded by a covenant or declaration deferring costs for water and sewer improvements for which the purchaser may be liable shall contain a disclosure that includes:
>
> > 1. The existence of the deferred private water and sewer assessments;
> > 2. The amount of the annual assessment;
> > 3. The approximate number of payments remaining on the assessment;
> > 4. The amount remaining on the assessment, including interest;
> > 5. The name and address of the person or entity most recently responsible for collection of the assessment;
> > 6. The interest rate on the assessment;
> > 7. The estimated payoff amount of the assessment; and
> > 8. A statement that payoff of the assessment is allowed without prepayment penalty.
>
> (ii) A person or entity establishing water and sewer costs for the initial sale of residential real property may not amortize costs that are passed on to a purchaser by imposing a deferred water and sewer charge for a period longer than 20 years after the date of the initial sale.

*See id.*  Written that way, the opening phrase of Real Prop. § 14-117(a)(3), "In Prince George's County," would intuitively modify the entire subsection that follows, including

24

subparagraph (a)(3)(ii). Because Real Prop. § 14-117(a)(3) is not written that way, and the phrase "In Prince George's County" appears only in romanette (i), the structure of § 14-117(a)(3) suggests that the phrase should apply only to the contents of romanette (i). Our review is not limited to the structure of the provision. *See Lockshin*, 412 Md. at 275–76, 987 A.2d at 29 (citations omitted).

Common expectations of normal paragraph structures indicate that a second subparagraph labeled "(a)(3)(ii)" would ordinarily relate in substance to the first subparagraph labeled "(a)(3)(i)." *See Cain v. State*, 386 Md. 320, 328, 872 A.2d 681, 686 (2005) (noting that statutory "provisions must be read in a commonsensical perspective to avoid a farfetched interpretation") (internal citation omitted). In this case, the first subparagraph, (a)(3)(i), pertains to deferred water and sewer costs *in Prince George's County*—a proposition not contested by the Elsberrys. Real Prop. § 14-117(a)(3)(i). It follows that one would ordinarily expect the subsequent subsidiary paragraph, here (a)(3)(ii), to also pertain geographically to deferred water and sewer costs in Prince George's County. It would be illogical for the General Assembly to enact a subsection of a statute relating to water and sewer assessments of properties within Montgomery and Prince George's Counties ((a)(1)), then create a subparagraph also related to water and sewer assessments within Prince George's County ((a)(3)(i)), but then, like a bolt from the blue, carve out a specific water and sewage amortization limitation that applies to the entire state ((a)(3)(ii)). If the General Assembly preferred a general restriction on water and sewer amortization for the entire state, it is highly unlikely that it would have buried the language in the second subparagraph of a third subsection where the first paragraph is

25

limited in effect only to Prince George's County. We agree with the Court of Special Appeals that it would be "rather curious" for the General Assembly to start a subsection by addressing deferred water and sewer assessments specifically in Prince George's County, but then expand the geographical reach of the next subsection to the entire state of Maryland. *Elsberry*, 2022 WL 94616, at *3. For that reason, even focusing exclusively on the contents of § 14-117(a)(3), without broader context, we conclude that the language is ambiguous. When we add in broader context supplied by the title and purpose paragraphs the General Assembly enacted with the codified language, the ambiguity disappears.

The Elsberrys argue HB 1043's title and purpose paragraphs constitute legislative history—not plain text. In support of this contention, the Elsberrys cite to *Motor Vehicle Administration v. Lytle*, 374 Md. 37, 821 A.2d 62 (2003). As the *Lytle* Court explained,

> [a]s we stated in *Kaczorowski v. Mayor and City Council of Baltimore*, . . . *even where the language of the statute is plain, its meaning is controlled by its context*. In short, *the statutory language must be construed in light of and governed by its context within the overall statutory scheme*. An appellate court *may consider evidence such as a bill's title and function paragraphs*, *amendments* that occurred as it passed through the [General Assembly], and *its relationship to earlier and subsequent legislation to ascertain the* [*General Assembly's*] *goal in enacting the statute*.

*Id.* at 57, 821 A.2d at 74 (emphasis added) (internal citations omitted). Contrary to the Elsberrys' claim, the *Lytle* Court did not expressly state that a bill's title and function paragraphs constitute legislative history; rather, a bill's title and function paragraphs are *indicative* of legislative intent. *Id.*; *Kaczorowski*, 309 Md. at 515, 525 A.2d at 632.

The dividing line between plain text and legislative history may seem academic since both support the same construction of an ambiguous statutory provision. As provided in *Lytle*, this Court may use the bill title, purpose, amendments, and earlier and subsequent litigation as tools in reaching the correct statutory construction. *Lytle*, 374 Md. at 57, 821 A.2d at 74 (citations omitted). As a matter of precision, the bill title and purpose *are* part of the statutory text—*not* the legislative history—even if both are used in service of ascertaining the intent of the General Assembly.

Generally, the title of the bill consists of three parts: the short title, the purpose paragraph, and one or more function paragraphs. *Legislative Drafting Manual*, *supra*, at 36. First, "[t]he purpose of the short title is to give a general indication of the content of the bill." *Id.* It essentially "tells the reader what the bill is about." *Id.* "If a bill relates to only one or two counties, their names should appear first [in the short title], with a word or two about the subject matter after the dash." *Id.* "A local bill number, assigned by the county delegation that has charge of the bill, appears on a separate line." *Id.* Second, "[t]he purpose paragraph is the part of the title that describes in constitutionally acceptable detail what the bill does." *Id.* at 37. Lastly, "[t]he function paragraph describes the action being taken, specifies the article and section of the Annotated Code or public local laws or the Session Laws that the bill affects, and identifies where the affected law is found." *Id.* at 39.

HB 1043's short title further demonstrates that Real Prop. § 14-117(a)(3)(ii) applies only to Prince George's County. Its short title reads: "Prince George's County — Deferred Water and Sewer Charges Homeowner Disclosure Act of 2014 PG 413-14[.]" This title,

27

evidenced by the subject followed by the dash, reinforces the connection between Prince George's County and the twenty-year water and sewer charges amortization limit in Real Prop. § 14-117(a)(3)(ii). HB 1043's short title also includes the local bill number assigned by the Prince George's County delegation. What the short title *doesn't say* is just as important as what it *does say*, and nothing in the short title indicates the bill applies statewide. HB 1043's purpose paragraph similarly does not provide any indication that the amortization limit applies anywhere but Prince George's County. HB 1043's purpose paragraph reads:

> FOR the purpose of [1] requiring a registered home builder *in Prince George's County* to include certain information relating to deferred water and sewer charges in certain sales contracts under certain circumstances; [2] requiring a certain contract for the initial sale of residential real property *in the county* to include certain information relating to deferred water and sewer charges; [3] prohibiting a person or entity establishing certain water and sewer costs for the initial sale of residential real property from amortizing certain costs for more than a certain period of time; [4] authorizing the purchaser to recover certain damages or take certain actions under certain circumstances; [5] applying certain provisions of law to existing single family residential property *in Prince George's County*; [6] requiring a certain person that imposes a deferred water and sewer charge to provide the property owner with a bill including certain information; [7] authorizing the balance owed on a deferred water and sewer assessment to be redeemed for a certain amount; [8] requiring *the county* to study certain issues relating to deferred water and sewer charges and report its findings to the *Prince George's County* Senators and the House Delegation on or before certain dates; [9] authorizing *the county*, in completing the studies required under this Act, to consult with certain water and sewer companies; and [10] generally relating to deferred water and sewer charges *in Prince George's County*."

(Emphasis added). The bracketed numbers denote the ten clauses in the purpose paragraph. Of the ten clauses, six expressly include the phrase "in Prince George's County" or "the county." Both the opening clause and the final summation clause, "relating to deferred

28

water and sewer charges[,]" are limited to applying "in Prince George's County." The third clause directly relates to the challenged statutory language, which does not include either "in Prince George's County" or "the county." However, the third clause immediately follows these references. Notably, no other county is referenced, and the purpose paragraph makes no mention of a statewide application.

Following the statutory construction principle of *ejusdem generis*,[8] "if the [General Assembly] had intended the general words to be construed in an unrestricted sense, it would not have enumerated the specific things." *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53, 56 (1993) (citations omitted). Similarly, if the General Assembly intended for the part of the bill relating to "prohibiting a person or entity establishing certain water and sewer costs for the initial sale of residential real property from amortizing certain costs for more than a certain period of time" to apply statewide, then it would not have specifically enumerated "Prince George's County" or "in the county" so frequently. *See Kaczorowski*, 309 Md. at 516, 525 A.2d at 633. The literal text of Real Prop. § 14-117(a)(3)(ii) may not specifically reference Prince George's County, but construing the provision, considering the entire statutory scheme, including the short title and purpose paragraph, indicates that the plain text applies exclusively to Prince George's County. We agree with the Court of Special Appeals that "we cannot find a legislative intent that simply does not exist." *Elsberry*, 2022 WL 94616, at *6.

---

[8] *Ejusdem generis* is Latin for "of the same kind or class[.]" *Ejusdem Generis*, *Black's Law Dictionary* (11th ed. 2019). It is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Id.*

29

**B. The legislative history of Real Prop. § 14-117(a)(3)(ii) confirms that the amortization provision only applies to Prince George's County.**

This Court may use legislative history as a "check" on its plain text interpretation. *Brown v. State*, 454 Md. 546, 551, 165 A.3d 398, 401 (2017); *see also Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 170, 258 A.3d 296, 308 (2021) ("We also review the legislative history of the statute to *confirm conclusions drawn from the text* or to resolve ambiguities.") (emphasis added); *In re S.K.*, 466 Md. 31, 50, 215 A.3d 300, 311 (2019) ("In addition to the plain language, the modern tendency of this Court is to continue the analysis of the statute beyond the plain meaning to examine 'extrinsic sources of legislative intent' in order to 'check [ ] our reading of a statute's plain language' . . . .") (citations omitted). The Elsberrys contend that Court of Special Appeals should not have consulted the legislative history of Real Prop. § 14-117(a)(3)(ii) because the statute is unambiguous. Relying on *Patton v. Wells Fargo Financial Maryland, Inc.*, the Elsberrys assert that a court may not consult legislative history when interpreting an unambiguous statute unless the General Assembly made a drafting mistake and to avoid absurd results. 437 Md. at 101, 85 A.3d at 177.

In *Patton*, a purchaser and lender disagreed regarding the appropriate statute of limitations for actions brought under the Credit Grantor Closed End Credit Law ("CLEC"), a Maryland statute that governed the parties' loan contract. *Id.* at 95–96, 85 A.3d at 173–74. Md. Code Ann., Commercial Law ("Com. Law") § 12-707(g) provides that "[a]n action under *this title* may be brought . . . within one year from the date of the occurrence of the violation." *Id.* at 96, 85 A.3d at 174. As a literal matter, CLEC appears in Title 12,

but the one-year statute of limitations, Com. Law § 12-707(g), appears in the Maryland Equal Credit Opportunity Act, "a statute that is quite distinct from CLEC and the other eleven subtitles of Title 12." *Id.* Recognizing the ambiguity between the literal interpretation of Com. Law § 12-707(g) and the contextual interpretation of Com. Law § 12-707(g), the *Patton* Court reviewed the statute's legislative history "to resolve the ambiguity of its application." *Id.* at 98, 85 A.3d at 175.

Contrary to the Elsberrys' stance, at no point did this Court or the Court of Special Appeals use legislative history to *contradict* the plain meaning of the statute. Rather, both courts employed legislative history (along with consideration of the context, objectives, and purpose of the statute) to evince the intent of the General Assembly. What this Court did in *Patton* is precisely what the Court of Special Appeals did in the instant case. Both recognized that the literal text, read in isolation, suggested one meaning, while reading the literal text in context of the larger statute, inclusive of its title, purpose, and other provisions, produced another meaning. *See id.* at 96–101, 85 A.3d at 174–77. The legislative history confirmed the latter meaning. *Id.* at 101, 85 A.3d at 177.

Our review of the legislative history of Real Prop. § 14-117(a)(3)(ii) supports the conclusion reached by the Court of Special Appeals. In the case at bar, we derive the legislative history of HB 1043 from the materials contained in the bill file.[9] As previously

---

[9] The bill file contains documents "reflecting the origins of a bill, the initial draft, and any additional materials[,]" which are "maintained first by the committee to which the bill is assigned and later by the Department of Legislative Reference Library." Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History*, 54 Md. L. Rev. 432, 441 (1995) (footnote omitted).

stated, the General Assembly created the Task Force to study deferred water and sewer rates by private developers in Montgomery County and Prince George's County. The Task Force provided its findings and recommendations to the Governor and Prince George's County and Montgomery County delegations in December 2013. The Executive Summary of the Task Force Report provides: "Based upon findings from two informational meetings and public hearing, the task force intends to support legislation that will improve the fiscal transparency of the budgetary decision [] making process within WSSC and to establish additional disclosure requirements for homeowners *in Prince George's County*." (Emphasis added). None of the findings or recommendations in the Task Force Report pertain to counties other than Montgomery County and Prince George's County. Furthermore, the recommendation that ultimately provided the basis for Real Prop. § 14-117(a)(3)(ii), Recommendation 9, expressly references Prince George's County: "Prohibit a person from amortizing for more than 20 years from the date of the initial sale the deferred water and sewer costs that are passed onto a purchaser. (Single-family residential property *in Prince George's County* improved by four or fewer single-family units)." (Emphasis added).

Montgomery County did not adopt the recommendations from the Task Force Report, but nonetheless voted for HB 1043. The decision to not adopt the recommendation for a twenty-year amortization limit, but overall vote for the bill, indicates Montgomery County's support for the amortization cap *in Prince George's County*, but not in Montgomery County. It seems less than likely that the Montgomery County delegation would endorse a *statewide* amortization cap when it declined to specifically adopt one from

32

the bi-county Task Force Report. Additionally, feasibility reports in the uncodified section of the bill were directed to the Prince George's County delegation. "The bill requires *Prince George's County* to study specified issues relating to deferred water and sewer charges and report its preliminary findings to *the Prince George's County Senators and House Delegation . . . .*" (Emphasis added).

The Elsberrys rely upon *Taylor v. Friedman*, 344 Md. 572, 689 A.2d 59 (1997), for the proposition that the Task Force Report cannot be used to thwart the intent of the General Assembly. However, *Taylor* is distinguishable in two respects. First, *Taylor* concerned whether Md. Code Ann., Com. Law § 12-121 "prohibit[ed] a mortgagee from charging [a] mortgagor fees for post-default, visual inspections of the mortgaged residence's exterior . . . ." *Id.* at 574, 689 A.2d at 60. There was no dispute that Com. Law § 12-121 applied statewide. In *Taylor*, the Task Force on Real Property Closing Costs, a legislative task force, provided the General Assembly a report of its findings and recommendations related to real property closing costs (the "Commission Report"). *Id.* at 579, 689 A.2d at 62. Accordingly, the Commission Report initiated the enactment of Com. Law § 12-121 but was not cited as evidence to elucidate the geographical reach of Com. Law § 12-121. *Id.* Unlike the Commission Report in *Taylor*, the Task Force Report provides evidence directly pertaining to the issue in the case at bar: the geographic scope of Real Prop. § 14-117(a)(3)(ii). Second, *Taylor* does not stand for the proposition that commission reports or task force reports should not be used in ascertaining the intent of the General Assembly, or even that such reports should have negligible weight. The bottom line of *Taylor* is that a commission or task force report "tail" should not wag the dog: "It is the intent of the

33

General Assembly that we must discern, not that of the Commission." *Id.* at 583, 689 A.2d at 64.

In the case at bar, the Task Force Report underscores the same conclusion manifested in the plain text of the statute, its short title, and purpose: Real Prop. § 14-117(a)(3)(ii) applies solely to Prince George's County. We also disagree with the Elsberrys' contention that moving the twenty-year amortization limit from Real Prop. § 14-117.1 to Real Prop. § 14-117(a)(3)(ii) between the First and Second Readings of HB 1043 provides any indication that the provision applies statewide. On the contrary, this relocation elucidates the General Assembly's intent that Real Prop. § 14-117(a)(3)(ii) only applies to Prince George's County. Real Prop. § 14-117.1(a) expressly states that the section exclusively applies to residential real property in Prince George's County. Real Prop. § 14-117.1. If language from a bill exclusively pertaining to real property in Prince George's County is moved to a new subparagraph within an existing paragraph exclusively pertaining to Prince George's County, it follows that the new subparagraph would not take on new meaning and apply statewide.

One final indicia of our conclusion: The vote for HB 1043 was unanimous, but there was no indication in the legislative record that other jurisdictions intended for (a)(3)(ii) to apply statewide. Some jurisdictions, such as Baltimore County, already impose an amortization limit that exceeds the twenty-year cap provided by (a)(3)(ii). If we adopt the Elsberrys' posture, then these jurisdictions' existing laws would be rescinded by HB 1043; however, there is no indication of discussion or debate from these jurisdictions, either challenging or acquiescing, to a new statewide regime. Therefore, we conclude that HB

34

1043's legislative history confirms our plain text interpretation that Real Prop. § 14-117(a)(3) only applies to Prince George's County.

**C. The Court of Special Appeals correctly interpreted Real Prop. § 14-117(a)(3)(ii) to avoid violating Article III, § 29 of the Maryland Constitution.**

Finally, the Court of Special Appeals determined that the Elsberrys' proposed statutory construction would violate Article III, § 29 of the Maryland Constitution. *Elsberry*, 2022 WL 94616, at *6 (citations omitted). We agree.

This Court generally construes statutory language in a way that avoids violating the Constitution. *Koshko v. Haining*, 398 Md. 404, 425–26, 921 A.2d 171, 183 (2007) ("the . . . canon of constitutional avoidance . . . provides that a statute will be construed so as to avoid a conflict with the Constitution whenever that course is reasonably possible.") (footnote, citations, and internal quotations omitted). As explained above, HB 1043's bill title is part of the statutory text of the law and is subject to the doctrine of constitutional avoidance. In addition to the general doctrine of constitutional avoidance, the Maryland Constitution, unlike other states, strictly limits the scope and subject of the short title. Article III, Section 29 of the Maryland Constitution states:

> The style of all Laws of this State shall be, "Be it enacted by the General Assembly of Maryland:" and all Laws shall be passed by original bill; *and every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title*; and no Law, nor section of Law, shall be revived, or amended by reference to its title, or section only; nor shall any Law be construed by reason of its title, to grant powers, or confer rights which are not expressly contained in the body of the Act . . . .

Md. Const. art. III, § 29 (emphasis added). The Maryland Legislative Desk Reference Manual provides practical guidance to the General Assembly for crafting bill titles in

35

compliance with Article III, § 29. *See Legislative Desk Reference Manual*, DEP'T LEGIS. SERVS., at 37–41 (2018) ["*Legislative Desk Reference Manual*"], http://dlslibrary.state.md.us/publications/OPA/I/LDRM_2018.pdf, *archived at* https://perma.cc/RZC2-W49A. As previously mentioned, Maryland's Constitution requires "every Law enacted by the General Assembly [to] embrace but *one subject*, and that shall be described in its title[.]" Md. Const. art. III, § 29 (emphasis added). "This requirement, known as the 'one subject rule,' is satisfied if an act does not contain foreign or 'nongermane' matter *and if the title of the act fairly advises the General Assembly and the public of the real nature and subject of the legislation*." *Legislative Desk Reference Manual*, *supra*, at 37 (emphasis added). Additionally, "[w]hile the title need not be an abstract of the contents of the body of the act, it must not be misleading." *Id*. Finally, "the title of an act must be sufficiently clear and comprehensive to reasonably cover the contents of the act." *Id*.

The Legislative Drafting Manual similarly provides guidance on bill short titles. *Legislative Drafting Manual*, *supra*, at 36. In short, "[t]he short title tells the reader what the bill is about." *Id*. Its "purpose . . . is to give a general indication of the content of the bill." *Id*. Generally, "no more than six to eight words need be used, and the drafter should avoid short titles that exceed 100 characters in length." *Id*. "Short titles commonly state the general subject of the bill first, followed by successively more detailed phrases separated by dashes." *Id*. Notably, "[i]f a bill relates to *only one or two counties*, *their*

36

*names should appear first*, with a word or two about the subject matter after the dash."[10] *Id.* (emphasis added). Furthermore, "[b]icounty agency bills should include the full name of the agency, followed by a very brief description of the content of the bill." *Id.* For local bills, "[a] local bill number, assigned by the county delegation that has charge of the bill, appears on a separate line." *Id.*

While this Court has "historically construed the one subject rule liberally in order to give effect to legislation, more recently the court has become stricter in its interpretation and has warned that there are limits to its willingness to find 'horizontal' or 'vertical' connections between 'completely separate and unrelated' provisions in legislation." *Legislative Desk Reference Manual*, *supra*, at 38. Additionally, this Court "is prepared to examine the circumstances surrounding the passage of the challenged legislation." *Id.* For example, in *Migdal v. State*, the Court rejected an "eleventh-hour" engraftment of a bill that inappropriately attempted to include "completely separate and unrelated provisions" of a previously defeated bill. 358 Md. 308, 319, 747 A.2d 1225, 1231 (2000) (footnote omitted). Because the bill in question violated the "one subject rule" by "contain[ing] two distinct and incongruous subjects," the *Migdal* Court held the bill was unconstitutional under Article III, § 29. *Id.* at 321, 747 A.2d at 1232 (internal quotations and citation omitted). This, the Court stated, was "precisely the type of legislative action Article III, [S]ection 29 was designed to prevent." *Id.* at 322, 747 A.2d at 1232.

_____

[10] The Elsberrys even "concede [] that [HB 1043's] short title begins with 'Prince George's County' followed by a dash[,]" and "acknowledge that this would tend to indicate that the bill would apply only to Prince George's County."

As discussed previously, both the short title and purpose paragraph of HB 1043 pertain to one subject: deferred water and sewer charges in Prince George's County. While the purpose paragraph provides several detailed applications of the law, including notice requirements and limits on amortization, each provision "generally relat[es] to deferred water and sewer charges in Prince George's County." Therefore, this interpretation of the title squarely falls within the "one subject rule" because it restrains the subject of HB 1043 to one item, deferred water and sewer costs, to one particular county, Prince George's County. The Court of Special Appeals avoided a violation of Article III, § 29 with its construction. *Elsberry*, 2022 WL 94616, at *7.

Conversely, if this Court adopted the Elsberrys' interpretation of the law, then it would conceivably jeopardize compliance with Article III, § 29. The Elsberrys' interpretation of Real Prop. § 14-117(a)(3)(ii) would run afoul of Maryland's Constitution by expanding the application of the statute beyond the specified county and upending a county-by-county approach to deferred water and sewer charges in Maryland. Rather than violating Article III, § 29, the most doctrinally sound interpretation of the law is to hold that the title limits its reach to real property within Prince George's County.

## CONCLUSION

We hold that Real Prop. § 14-117(a)(3)(ii) applies only to residential real property located in Prince George's County as evidenced by the statute's plain text, short title, and purpose paragraph, and further confirmed by the legislative history. We also hold that the Court of Special Appeals did not err by considering whether a particular construction of

38

Real Prop. § 14-117(a)(3)(ii) violated Article III, § 29 of the Maryland Constitution.  For

the reasons expressed within, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**